UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 13-CV-11694-DJC
(Honorable Denise J. Casper, District Court Judge)

In Re: ROBERT E. SPAGNUOLO, JR.

Chapter 7 Case No. 11-10844 JNF
Adversary Proceeding No.  11-01290 JNF

ROBERT E. SPAGNUOLO, JR, d/b/a
SPAGNUOLO CONSTRUCTION,
Defendant-Appellant

EDWINA BROOKE-PETIT,
Plaintiff-Appellee

On Appeal From An Order Of The United States Bankruptcy Court
For The District Of Massachusetts
(Honorable Joan N. Feeney, Bankruptcy Judge)

**RECORD APPENDIX**

VOLUME II
PAGES 62-162

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| ROBERT E. SPAGNUOLO, JR., | ) | Case No. 11-10844-JNF |
| | ) | |
| Debtor | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| EDWINA BROOKE-PETIT, | ) | Adversary Proceeding No. 1101290 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| ROBERT SPAGNUOLO, d/b/a | ) | |
| SPAGNUOLO CONSTRUCTION, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## MOTION FOR SUMMARY JUDGMENT

Now comes Edwina Brooke-Petit (the "Plaintiff"), and hereby moves this Court for

summary judgment pursuant to Fed. R. Civ. P. 56, as made applicable to these proceedings by

Federal Rule of Bankruptcy Procedure 7056.

In support hereof, the Plaintiff states as follows:

### Background

The Plaintiff has pled a prima facie cause of action in the Complaint. The Defendant was

engaged to perform and supervise extensive renovations to the Plaintiff's real property located at

131 Timberlane Drive, Mashpee, Massachusetts (the "Property"). The Defendant failed to

Appellant App. 62
Spagnuolo

provide the Plaintiff with a written contract prior to commencement of the project as required by

Statute, Mass Gen Laws .Chapter 142A, section 2). The Defendant both performed certain

services himself, and hired and supervised other contractors to provide services in connection

with the project including subcontractors related to the defendant. The Defendant failed to obtain

proper and required permits, and the permit he did obtain was incomplete, incorrect and signed

without authorization from the Plaintiff. The Defendants work was shoddy, incomplete and not

done in a workmanlike manner. The Defendant failed to properly supervise his subcontractors

and their work was similarly substandard and incomplete. The Defendant made false

representations to the Plaintiff and fraudulently obtained money from the Plaintiff. A copy of the

Complaint is annexed hereto as Exhibit "A".

In or about November of 2006 the Plaintiff instituted suit against the Defendant in the

Middlesex Superior Court (the "Trial Court") for damages arising from Defendants breach of

contract, fraud, unfair and deceptive acts and practices in violation of Massachusetts General

Laws Chapter 93A, and breach of Massachusetts General Laws Chapter 142A. The Trial Court

held a four (4) day trial ending on August 24, 2010. The Judge gave a detailed and explicit

instruction on each of the five (5) elements of fraud. The Jury entered a verdict of $250,000.00

against the Defendant and found fraud as evidenced by a "yes" response to special questions,

including: "Did the Defendant commit fraud, deceit, and/or misrepresentations by any means, in

connection with the services provided by the Defendant to the Plaintiff?"

On August 24, 2010, and immediately after the Jury had been discharged, the Trial Judge

held a hearing pursuant to Massachusetts Rules of Civil Procedure Rule 69, to determine the

Defendants ability to satisfy the Judgment entered in the Trial Court. At the Rule 69 hearing,

during which the Defendant was represented by counsel, the Judge stated, at page 15, "this is a

BOST_182956.1
BOST_184585.2

*Appellant App. 63*
*Spagnuolo*

fraudulent finding by the jury…it's not protected by bankruptcy…" A copy of the Rule 64 Transcript is annexed hereto as Exhibit "B".

The Defendant filed a Notice of Appeal which he did not prosecute and on December 28, 2010 the appeal was dismissed, with prejudice. On February 1, 2011 the Defendant filed the above-captioned Chapter 7 case. The Plaintiff then filed a Complaint seeking to bar the Defendants discharge under 11 U.S.C. sections 523(a) (2) and (6).

Summary Judgment Standard

A motion for summary judgment is governed by the same standards applicable to motions under Fed. R. Civ. P. 56. See Fed. R. Bankr. P. 7056. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary Judgment is appropriate when the pleadings in a case tend to prove the absence of a genuine dispute of any material fact. Celotex Corp. v. Catrett, 277 U.S. 317, 323 (1986). A material issue is one that affects the outcome of litigation. To be considered "genuine' for Rule 56 purposes, a material issue must be established by sufficient evidence supporting the claimed factual dispute…to require a jury or judge to resolve the parties' differing versions of the truth at trial.

"A material issue is one which affects the outcome of the litigation. To be considered 'genuine' for Rule 56 purposes a material issue must be established by 'sufficient evidence supporting the claimed factual dispute…to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" Hahn v. Sargent, 523 F.2d 461,464 (1st Cir. 1975) quoting First National Bank of Arizona v. Cities Service Co. Inc., 391 U.S. 253, 289 (1968).

3

## Preclusive effect of a pre-petition Judgment

Preclusion principles apply to actions seeking to except debts from discharge. <u>Blacksmith</u>

<u>Invs., Inc. v. Woodford</u> (In re Woodford), 418 B.R. 644, 650 (B.A.P. 1st Cir. 2009) (citing, *inter*

*alia*, <u>Grogan v. Garner,</u> 498 U.S. 279, 284 n.11, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991)

Bankruptcy courts must apply the collateral estoppel law of the state in which the judgment was

rendered. <u>U.S. v. One Parcel of Real Property,</u> 900 F.2d 470, 473 (1st Cir. 1990).

It is well settled that res judicata is not applicable to dischargeability actions because the

granting of a discharge is within the exclusive province of the bankruptcy court. <u>Brown v.</u>

<u>Felsen,</u> 442 U.S. 127 (1979). Unlike res judicata, collateral estoppel principles apply in

proceedings to determine dischargeability of a debt. <u>Grogan v. Garner,</u> 498 U.S. 279, 285;

<u>Brown,</u> 442. U.S. at 139 n. 10 ("[i]f, in the course of adjudicating a state law question, a state

court should determine factual issues using standards identical to those [under the discharge

provision of the bankruptcy code], then collateral estoppel…would bar re-litigation of those

issues in the bankruptcy court"). The elements most at issue are (i) whether the issues determined

in the pre-petition litigation are identical to the issues in question in the dischargeability action;

and (ii) whether the issue one party is seeking to preclude from a new determination was actually

litigated in the pre-petition case. Collateral estoppel will bar the re-litigation of a claim if (1) the

issue is identical, (2) the issue was resolved finally on the merits, and (3) the party to be estopped

appeared as a party in the first action. <u>In re: Petrucelli v. D'Abrosca,</u> 2011 Bankr. LEXIS 3007.

Collateral estoppel bars re-litigation of an issue previously decided if the party against

whom the prior decision is asserted had a full and fair opportunity to litigate that issue in an

earlier case. For collateral estoppel to apply to a later action, a party must establish that: (1) the

issue sought to be precluded is the same as that in the prior action: (2) the issue was actually

4

*Appellant App. 65*
*Spagnuolo*

litigated in the prior action; (3) the issue was determined by a valid and binding final judgment;

and (4) the issue's determination was essential to the judgment. An issue may be actually decided

even if it is not explicitly decided, for it may have constituted, logically or practically, a

necessary component of the decision reached in the prior litigation. In re Jones, 300 B.R. 133,

137 (B.A.P. 1st Cir. 2003). Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 30-31 (1st Cir.

1994). In order to determine whether an issue was actually decided in pre-petition litigation such

that re-litigation is barred in a subsequent dischargeability action, the court must compare the

pre-petition judgment with the elements of a dischargeability objection. In re: Slosberg, 225 B.R.

9 (D. ME 1988).

<u>Jury Instructions and Collateral Estoppel</u>

Courts have examined whether the state court jury instructions were sufficient to allow

for application of collateral estoppel in a non-dischargeability action. See, e.g., Duncan v.

Duncan (In re Duncan), 448 F.3d 725, 729-30 (4th Cir. 2006) (declining to apply collateral

estoppel for summary judgment where jury instruction resulted in two categories of willful and

wanton conduct.); Bailey v. Cook (In re Bailey), 34 Fed. Appx. 150 (5th Cir. 2002) (ruling jury

instructions and findings rose to the level of § 523(a)(2)(A) warranting application of collateral

estoppel); Hobson Mould Works, Inc. v. Madsen (In re Madsen), 195 F.3d 988, 989-90 (8th Cir

1999) (granting summary judgment as jury instruction definitions were equal to standards

under § 523(a)(6)); Stahl v. Gross, 288 B.R. 655, 658 (Bankr. E.D.N.Y. 2003) ("An examination

of the jury instructions in the context of the applicable law governing the tort of malicious

prosecution clearly demonstrates that the issue of willfulness within the meaning of §

523(a)(6) was actually and necessarily litigated in the earlier malicious prosecution action."); Big

River Props., Inc. v. Stafford (In re Stafford), 223 B.R. 94, (Bankr.) N.D. Miss. 1998) granting

BOST_182955.1
BOST_184585.2

*Appellant App. 66*
*Spagnuolo*

summary judgment based upon issue preclusion as jury instruction contained same standard for action under § 523(a)(2)(A)).

<u>Argument</u>

It is presumed that juries follow instructions, <u>U.S. v. Griffin</u>, 524 F.3d 71, 78 (1st Cir. 2008. Annexed hereto as Exhibit "C" is a copy of the Special Jury Verdict Slip entered in the Trial Court, which states that the facts presented at trial were sufficient to support a finding that the Defendant committed "fraud, deceit and/or misrepresentation". Further, the Jury found facts sufficient to find that the Debtor violated M.G.L. c. 142A and consequently, by statute, the M.G.L. c. 93A.

The Trial Judge, in his jury instructions, went into great detail as to the five elements of fraud. Annexed hereto as Exhibit "D" is a copy of the relevant portions of the Trial Transcript as it relates to the jury instructions. In the jury instructions, the trial judge discussed in detail the five elements of fraud. See Transcript at page 27, line 21 through page 30, line 17. The Trial Judge then went on to discuss in detail false statements and intentional misrepresentations. See Transcript page 30, line 18 through page 32, line 11 and willful disregard of the truth and the Plaintiffs reliance thereon. See Transcript page 32, line 12 through page 34, line 1. The Judge also went on to discuss M.G.L. c. 142A and stated at page 39, lines 22 through 24 that a violation of M.G.L. c. 142A constituted a violation of M.G.L. c. 93A. Lastly, the Judge discussed the elements of a violation of M.G.L. c. 93A. See Transcript page 40, line 20 through page 42, line 23.

There is nothing in the jury instruction that allow the inference that the damages from fraud did not constitute the entire amount of the judgment. In addition, the Judge specifically made it clear the entire amount of the judgment stemmed from the Debtor's fraudulent activities

6

and was non-dischargeable. If the Debtor thought the jury findings were incomplete, it was incumbent upon the Debtor to have the jury instructions and findings distinguish between damages resulting from different counts if he thought the damages were different from different counts in the complaint. The Debtor had every opportunity to differ the amount of damages resulting from the different counts at the time of trial and subsequent appeal. He did not do so. The consequence of his failure to act is that there is no jury finding that he can rely upon to assert all of the damages did not result from fraud. Consequently, there is no basis for this Court to find that a portion of the damages did not result from fraud.

The Supreme Judicial Court explained that under M.R.C.P. 49(a), the jury does not issue a general verdict. <u>Solimene v. B. Grauel & Co., KG, & another,</u> 399 Mass. 790 (1987); <u>Commonwealth v. Licciardi,</u> 387 Mass. 670 (1982). A verdict under rule 49(a) consist of a "statement of facts the jury have found from which the judge determines the appropriate judgment." <u>Commonwealth</u> Ibid at 675. It is further explained that "if the jury's answer can be harmonized, they must be resolved so as to harmonize them" [citations omitted] <u>Solimene</u> Ibid at 800. Ambiguity is not to be construed in favor of disregarding a verdict reached after many days of trail

This is especially true here where the Debtor already had two bites of the apple trying to re-litigate. First, he sought a new trial which was denied. Second, he sought an appeal which he did not pursue. He should not now be able to waste the resources of the plaintiff and the Bankruptcy Court forcing them to re-litigate the issue of fraud when fraud was already found in a multi-day trial.

BOST_182955.1
BOST_184585.2

Under section 523(a)(6) there must be a finding of willful and malicious injury, while under 523(a)(2) the court must find false pretenses, a false representation or actual fraud. As the trial transcript shows, these elements were explained in detail in the jury instructions on fraud and intentional misrepresentation. Therefore, it is clear that these issues were actually litigated in the Trial Court.

Based upon the foregoing, collateral estoppel should apply and the Plaintiff should be entitled to judgment on the basis of the allegations of the Complaint and other evidence properly before this Court.

EDWINA BROOKE-PETIT,
By her Attorneys,

/s/ Bill N. Jacob, Esq.
Bill N. Jacob, Esq. (BBO #550959)
Herbert Weinberg, Esq. (BBO #550415)
Rosenberg & Weinberg
805 Turnpike Street, Suite 201
North Andover, MA 01845
(978) 683-2479

November 13, 2012

BOST_182955.1
BOST_184585.2

Appellant App. 69
Spagnuolo

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

|                          |     |                        |
|--------------------------|-----|------------------------|
| IN RE:                   | )   |                        |
|                          | )   | CHAPTER 7              |
| ROBERT E. SPAGNUOLO, JR.,| )   | CASE NO. 11-10844-JNF  |
| DEBTOR                   | )   |                        |

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the Motion for Summary Judgment was day sent, by first class mail, postage prepaid or through the Court's ECF system to the following:

U. S. Trustee's Office
John W. McCormack Building
Post Office Square
Boston, MA  02109

Laurel E. Bretta, Esq.
Bretta & Grimaldi, PA
19 Mystic Avenue
Medford, MA 02155

John Aquino, Esq.
Anderson Aquino, LLP
240 Lewis Wharf
Boston, MA 02110

Recovery Management Systems Corp.
25 SE 2nd Avenue, Ste. 1120
Miami, FL  33131

Signed under the penalties of perjury this 15th day of November 2012.

/s/ Herbert Weinberg
Herbert Weinberg (BBO #550415)
Rosenberg & Weinberg
805 Turnpike Street
North Andover, MA 01845
(978) 683-2479
hweinberg@jrhwlaw.com

# EXHIBIT A

*Appellant App. 71*
*Spagnuolo*

EXHIBIT 1a-1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | CHAPTER 7 |
| ROBERT E. SPAGNUOLO, JR., | ) | CASE NO. 11-10844-JNF |
| DEBTOR | ) | |
| | ) | |
| Edwina Brooke-Petit, | ) | Adv. Pro. No._____ |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Robert Spagnuolo, d/b/a | ) | |
| Spagnuolo Construction | ) | |
| Defendants | ) | |

## COMPLAINT TO DETERMINE DISCHARGEABILITY

Plaintiff, Edwina Brooke-Petit, brings this action to determine that her claims against the Defendant, Robert Spagnuolo, d/b/a Spagnuolo Construction, are nondischargeable pursuant to 11 U.S.C. Section 523(a)(2) and 11 U.S.C. Section 523(a)(6).

### Jurisdiction and Venue

1. The Court has jurisdiction over this Application pursuant to 28 U.S.C. Sections 157 and 1334.

2. Venue is proper in this District pursuant to 28 U.S.C. Sections 1408 and 1409. This is a "core" proceeding pursuant to 28 U.S.C. Section 157(b).

3. The statutory predicate for the relief sought herein is 11 U.S.C. Section 523(a).

### Parties

4. Plaintiff, Edwina Brooke-Petit ("Brook-Petit"), is an individual with a principal residence of 535 Beacon Street Boston, Massachusetts 02454.

5. The Defendant, Robert Spagnuolo, d/b/a Spagnuolo Construction ("Spagnuolo") is an individual with a principal residence of 50 North Margin Street, Boston, Massachusetts 02113.

### Facts Common to All Counts

6. Brooke-Petit is the owner of certain real estate located 131 Timberlane Drive, Mashpee, Massachusetts (the "Premises").

7. Upon information and belief, Spagnuolo is engaged in the construction industry, providing renovation, construction and general contractor services to, *inter alia*, home owners in the Commonwealth.

8. In 2005, Brooke-Petit engaged Spagnuolo to perform and supervise extensive renovations and construction at the premises (the "Project").

9. Spagnuolo failed to provide Brooke-Petit with a written contract prior to commencement of the Project.

10. Spagnuolo both performed certain services himself, and hired and supervised other contractors to provide other services in connection with the Project (the "Subcontractors").

11. Spagnuolo failed to obtain proper and required permits in connection with the Project. The permit that he did obtain was incomplete, incorrect and he signed without authorization on behalf of Brooke-Petit.

12. Spagnuolo's work was shoddy, incomplete and incompetent and caused significant damage to the Premises.

13. Spagnuolo failed to supervise the Subcontractors.

14. The work of Subcontractors was also substandard and unacceptable, causing further damage to the Premises.

15. The value of the Property was substantially diminished due to Spagnuolo's conduct and as a result, the then existing structure had to be torn down and a new structure built.

16. Brooke-Petit has suffered substantial damages caused by Spagnuolo's breach of contract and other failures and conduct, and is not aware of any liability insurance of Spagnuolo suitable to cover such damages.

17. Spagnuolo made false representations including but not limited to the services performed.

18. Spagnuolo fraudulently obtained money from Brooke-Petit.

19. Spagnuolo obtained money from Brooke-Petit under false pretenses.

20. On November 2, 2006, Brooke-Petit filed a complaint against Spagnuolo in the Middlesex County Superior Court (the "Trial Court") for damages resulting from the Spagnuolo's breach of contract, fraud, unfair and deceptive trade practices in violation of Massachusetts General Laws Chapter 93A, and breach of Massachusetts General Laws Chapter 142A (the "Trial Court Complaint"). A true and accurate copy of the Trial Court Complaint is incorporated herein by reference and attached hereto as Exhibit A.

21. The State Court held a four day trial ending on August 24, 1010.

22. The Judge gave a detailed and explicit instruction on each of all five elements of fraud and the damages to be assessed.

23. On August 24, 2010, the jury entered a verdict of $250,000 against the Debtor. The jury found fraud as evidenced by the Jury's "yes" response to special questions, including:

> FRAUD:
>
> 3.    Did the Defendant commit fraud, deceit, and/or misrepresentations by any means, in connection with the services provided by the Defendant to the Plaintiff?"

22.  On August 24, 2010, immediately after the Jury had been discharged, the Judge hearing the matter, Judge Dennis J. Curren, held a Massachusetts Rules of Civil Procedure Rule 69[1] to determine the Debtor's ability to pay the said judgment. A copy of the transcript is annexed hereto as Exhibit "B".

> 4.    At the Rule 69 hearing during which the Debtor had counsel, the transcript on page 15 (15) reflects:
>
> The Court: this is a fraudulent finding by the jury. Do you understand?
>
> Mr. Spagnuolo: Yes
>
> The Court: It's not protected by bankruptcy. Are we all on the same page?
>
> Mr. Spagnuolo: Yes.

---

[1] Mass. R. Civ. P. Rule 69 (Execution), states as follows: Process to enforce a judgment for the payment of money shall be a writ of execution, unless the Court directs otherwise. The procedure on execution, in proceedings on and in aid of execution shall be in accordance with applicable statutes. In aid of the judgment or execution, the judgment creditor or his successor in interest when that interest appears of record, may obtain discovery from any person, including the judgment debtor, in the manner provided in these rules.

23  The Defendant Spagnuolo timely filed a notice of appeal which he did not
    prosecute, and on or about December 28, 2010, the Court dismissed the appeal
    with Prejudice.  It is apparent that Debtor only filed the Notice of Appeal to allow
    him to sell real property, his principal residence at 8 Concord Road, Stoneham,
    MA, on September 15, 2010, to a third party, at a substantial gain.[2]

24. On February 1, 2011, Robert Spagnuolo, Jr. (the "Debtor") filed a voluntary
    petition for relief under Chapter 7 of the Code.

## COUNT I

### (Nondischargeability – 11 U.S.C. Sec. 523(a)(2))

25. Brooke-Petit repeats and incorporated by reference the allegations in contained in
    paragraph 1 through 24 of this Complaint.

26. Section 523(a) of the Bankruptcy Code excepts certain debts from discharge, and
    provided in pertinent part:

    A discharge under Section 727, 1141, 1228(a), 1228(b) or 1328b) of this
    title does not discharge an individual debtor from any debt

    (2) ...money...to the extent obtained by (a) False Pretenses, a false
    representation or actual fraud
    11 U.S.C. Section 523(a).

27. Spagnuolo's conduct in connection with the Trial Court Complaint was false
    pretenses, false representation and actual fraud.

28. Spagnolo's conduct in connection with the Trial Court Complaint injured Brooke-
    Petit and the Property.

29. Brooke-Petit's claims against Spagnuolo arise out of the Judgment on account of
    Spagnuolo's false pretenses, false representations and actual fraud.

30. Brooke-Petit's entire claims against Spagnuolo are nondischargeable pursuant to
    Section 523(a)(2) of the Bankruptcy Code.

---

[2] On or about September 16, 2010, $337,151.87 was deposited into an account at Century Bank, #21663920, under
the Debtor's wife's name (Andrea Spagnuolo).  This deposit coincides with the recording of the Deed for the 8
Concord Road property on September 15, 2010.  Further, this property was originally purchased by Debtor for fair
market value ($93,000.00) on June 17, 1988.  Brooke asserts that it was fraudulently transferred by Debtor to a
nominee trust and then to Debtor's wife for nominal consideration.  Notwithstanding, at all times Debtor unilaterally
controlled the property and the proceeds thereof.

31. The fraud issue was finally adjudicated in State Court and the Debtor is collaterally estopped from challenging that the claims are nondischargeable under 11 U.S.C. Section 523(a)(6).

## COUNT II

### (Nondischargeability – 11 U.S.C Section 523(a)(6)

32. Brooke-Petit represents and incorporates herein by reference the allegations contained in paragraphs 1 through 31 of this Complaint.

33. Section 523(a) of the Bankruptcy Code excepts certain debts from discharge and provided, in pertinent part:

> A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> (6)    for willful and malicious injury by the Debtor to another entity or to the property of another entity.

11 U.S.C. Section 523(a)

34. Spagnuolo's conduct in connection with the Trial Court Complaint was willful and malicious.

35. Spagnuolo's conduct in connection with the Trial Court Complaint violated Chapter 93A and Chapter 142A of the Massachusetts General Laws.

36. Spagnuolo's conduct in connection with the Trial Court Complaint injured Brooke-Petit and the Property.

37. Brooke-Petit's claims against Spagnuolo arise out of the Judgment on account of Spagnuolo's willful and malicious injury to her.

38. Brooke-Petit's entire claims against Spagnuolo are nondischargeable pursuant to Section 523(a)(6) of the Bankruptcy Code.

WHEREFORE, Edwina Brooke-Petit respectfully requests that this Court:

(a) after trial, enter judgment in favor of Brooke-Petit and against Spagnuolo on Count I of the Complaint;

(b) after trial, enter judgment in favor Brooke-Petit and against Spagnuolo on Count II of the Complaint;

(c) after trial, enter judgment determining that the claims of Brooke-Petit against Spagnuolo are nondischargeable pursuant to Section 523(a)(2) of the Bankruptcy Code; and

(d) award Brooke-Petit such other and further relief as this Court deems just and necessary.

Edwina Brooke-Petit

By her attorneys,

/s/ Herbert Weinberg
Herbert Weinberg (BBO #550415)
Rosenberg & Weinberg
805 Turnpike Street
North Andover, MA 01845
(978) 683-2479
hweinberg@jrhwlaw.com

Dated: September 28, 2011

# EXHIBIT B

**Exhibit b**                                      P a g e   | 1

Volume I
Pages: 1-18
Exhibits: 0

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.                    SUPERIOR COURT DEPARTMENT
                                  OF THE TRIAL COURT

*****************************
EDWINA BROOKE-PETIT          *
     Plaintiff               *
                             *
v.                           *  DOCKET NUMBER MICV2006-04145
                             *
ROBERT SPAGNUOLO             *
     Defendant               *
                             *
*****************************

             RULE 69 CONFERENCE
         BEFORE THE HONORABLE DENNIS J. CURRAN


APPEARANCES:


109 Highland Avenue
Needham Heights, Massachusetts 02494
By:  Michael Magerer, Esq.

For the Defendant:
175 Federal Street
Boston, Massachusetts 02110
By:  Robert C. Gabler, Esq.

                         Woburn, Massachusetts
                         August 24, 2010


Recording produced by digital audio recording system. Transcript
produced by Approved Court Transcriber, Donna Holmes

Case 11-10844    Doc 79    Filed 08/15/11    Entered 08/15/11 12:33:01    Desc Main
Case 1:13-cv-11694-DJC    Document 15    Page Filed 08/23/13    Page 20 of 102

Page | 2

# I N D E X

| WITNESS | DIRECT | CROSS | REDIRECT | RECROSS |
|---------|--------|-------|----------|---------|

Testimony of Mr. Spagnuolo
 By the Court, page 3
 By Mr. Magerer, page 13

Case 11-10044    Doc 79    Filed 08/15/11    Entered 08/15/11 12:33:01    Desc Main
Case 1:13-cv-11694-DJC    Document 15-Page 21 of 102    Filed 08/23/13    Page 21 of 102

Page | 3

1              **P R O C E E D I N G S**

2   (Court called to order.)

3     THE CLERK: Back on the record, your Honor.

4     THE COURT: All right.

5     All right. Mr. Spagnuolo is here. Ms. Edwina Brooke-Petit

6 is here.

7     All right. We are going to conduct a Rule 69 hearing right

8 now and put Mr. Spagnuolo on the witness stand.

9     Mr. Spagnuolo, would you come up, and we're going to

10 determine what your assets are.

11     THE CLERK: Do I have to swear him in, your Honor?

12     THE COURT: That would be nice.

13          **ROBERT SPAGNUOLO, Sworn**

14     THE COURT: Mr. Spagnuolo, good afternoon.

15     MR. SPAGNUOLO:  Good afternoon, Judge.

16     THE COURT: We have just seen a jury verdict in the amount

17 of $250,000 against you personally. Did you hear that verdict

18 in Court?

19     MR. SPAGNUOLO: Yes, your Honor.

20     THE COURT: You also heard that there was a -- fraudulent

21 conduct engaged in by you, did you hear that too?

22     MR. SPAGNUOLO: Yes. Yes.

23     THE COURT: All right. And do you know what the interest

24 factor is on this verdict of $250,000?

25     MR. SPAGNUOLO: No.

```
 1          THE COURT: All right. It's forty -- Martha, could you tell
 2     Court Officer Mulane to keep it down?
 3          THE CLERK: Certainly.
 4          THE COURT: It's $112,500 for a total value in this jury
 5     verdict so far, $362,000.  Do you have that with you?  Or do
 6     you have assets --
 7          MR. SPAGNUOLO: Yeah, I have it in my pocket, your Honor.
 8          THE COURT: Ha, ha.  All right. How are you going to pay
 9     this?
10          MR. SPAGNUOLO: I can't pay it.
11          THE COURT: You can't pay it. Do you have a wallet?
12          MR. SPAGNUOLO: What's that?
13          THE COURT: Do you have a wallet?
14          MR. SPAGNUOLO: No.
15          THE COURT: You don't have a wallet?
16          MR. SPAGNUOLO: No. A wallet?
17          THE COURT: Yes.
18          MR. SPAGNUOLO: No, I don't.
19          THE COURT: What do you have on you, sir?
20          MR. SPAGNUOLO: Nothing.
21          THE COURT: You don't have anything on you?  You have no
22     money on you at all?  Do you mind standing up, sir?
23          MR. SPAGNUOLO: Yeah.
24          THE COURT: Do you mind opening your pockets?
25          MR. SPAGNUOLO: Yeah, what do you want?  My money?
```

Case 11-10844   Doc 79   Filed 08/15/11   Entered 08/15/11 12:33:01   Desc Main
Case 1:13-cv-11694-DJC   Document 15   Page 8 of 26   Filed 08/23/13   Page 23 of 102

Page | 5

1    THE COURT: I want you to put on the table what you have got

2    for money.

3    MR. SPAGNUOLO: That's what I have.

4    THE COURT: Is that it?

5    MR. SPAGNUOLO: That's it, sir.

6    THE COURT: Okay. Anything else?

7    MR. SPAGNUOLO: No.

8    THE COURT: All right. And how much is that?

9    MR. SPAGNUOLO: I don't know.

10   THE COURT: Okay, less than twenty bucks? Okay. All right.

11   Where are your bank accounts, Mr. Spagnuolo?

12   MR. SPAGNUOLO: What?

13   THE COURT: Your bank accounts.  What bank do you do banking

14   at?

15   MR. SPAGNUOLO: Stoneham Savings.

16   THE COURT: Stoneham Savings. How many banks do you have --

17   bank accounts do you have there?

18   MR. SPAGNUOLO: That's it.

19   THE COURT: Take a seat. Anywhere else?

20   MR. SPAGNUOLO: No.

21   THE COURT: All right. And how many -- you have one bank

22   account there?

23   MR. SPAGNUOLO: Yes.

24   THE COURT: Do you have -- do you have a money market

25   account?

Donna Holmes
(781) 575-8000

Case 11-10844   Doc 79   Filed 08/15/11   Entered 08/15/11 12:33:01   Desc Main
Case 1:13-cv-11694-DJC   Document 15-1 Filed 08/23/13   Page 24 of 102

Page | 6

1    MR. SPAGNUOLO: No.

2    THE COURT: Do you have a savings account there?

3    MR. SPAGNUOLO: No.

4    THE COURT: You just have a checking account?

5    MR. SPAGNUOLO: Yes.

6    THE COURT: And what property do you own, real property?

7    MR. SPAGNUOLO: I don't own any property, your Honor.

8    THE COURT: Nothing?

9    MR. SPAGNUOLO: No.

10   THE COURT: Are you a trustee of any property?

11   MR. SPAGNUOLO: I'm a trustee, that's it.

12   THE COURT: All right. Well, why don't you tell me, because

13   we're on the record, and we are under oath, Mr. Spagnuolo.

14   I'd like to know what properties you are a trustee of?

15   MR. SPAGNUOLO: I'm a trustee of Stoneham Trust.

16   THE COURT: Where else?

17   MR. SPAGNUOLO: What's the name of the trust you're talking

18   about?

19   THE COURT: I want to know what real property you have an

20   interest in, either by beneficiary or by being a trustee.

21   MR. SPAGNUOLO: I'm a trustee. That's it.

22   THE COURT: And what property does the Stoneham Trust have

23   an interest in?

24   MR. SPAGNUOLO: What property?  8 Concord Road.

25   THE COURT: 8 Concord Road.

Donna Holmes
(781) 575-8000

1    MR. SPAGNUOLO: Yes.

2    THE COURT: What else?

3    MR. SPAGNUOLO: 50 No Margin.

4    THE COURT: 15 what?

5    MR. SPAGNUOLO: 50 No Margin.

6    THE COURT: Could you spell that?

7    MR. SPAGNUOLO: N-O-M-A-R-G-I-N. Street.

8    THE COURT: Nomargin?

9    MR. SPAGNUOLO: North Margin.

10    THE COURT: Oh, North Margin.

11    MR. SPAGNUOLO: Yeah.

12    THE COURT: Okay. And what cities or towns are those two

13    properties in?

14    MR. SPAGNUOLO: Boston, Mass.

15    THE COURT: For 8 Concord Road?

16    MR. SPAGNUOLO: Stoneham, Mass.

17    THE COURT: All right. What -- North Margin, where is that?

18    MR. SPAGNUOLO: In Boston.

19    THE COURT: East Boston or the north end?

20    MR. SPAGNUOLO: No, north end.

21    THE COURT: North end. And what's the assessed value on that

22    property? Come on?

23    MR. SPAGNUOLO: Probably a million.

24    THE COURT: A million. And how about 8 Concord Road? What's

25    the assessed value on that?

1     MR. SPAGNUOLO: Probably 650.

2     THE COURT: 650. Are you a beneficiary of either of these

3     properties?

4     MR. SPAGNUOLO: No.

5     THE COURT: Do you have a trust document?

6     MR. SPAGNUOLO: I don't have it with me.

7     THE COURT: Okay. Are you going to get it for us?

8     MR. SPAGNUOLO: If you want them, I'll get them for you.

9     THE COURT: Yes, this is not an idle question, sir. I want

10    them by tomorrow morning at nine o'clock.

11    Are you a beneficiary of any real estate trust?

12    MR. SPAGNUOLO: No, sir.

13    THE COURT: Are you sure of that?

14    MR. SPAGNUOLO: I'm positive.

15    THE COURT: Okay. What credit cards do you have?

16    MR. SPAGNUOLO: I don't have any at all.

17    THE COURT: No credit cards at all?

18    MR. SPAGNUOLO: I've got American Express.

19    THE COURT: Oh, you do have an American Express.

20    MR. SPAGNUOLO: Yes.

21    THE COURT: So that's a credit card, right? Or a charge card

22    I suppose?

23    MR. SPAGNUOLO: Yeah.

24    THE COURT: All right. Do you have that card with you today?

25    MR. SPAGNUOLO: No.

1    THE COURT: Is it in your car?

2    MR. SPAGNUOLO: No, sir.

3    THE COURT: Did you leave your wallet in your car, sir?

4    MR. SPAGNUOLO: I never carry a wallet, your Honor.

5    THE COURT: Okay. All right. You agree to provide your

6    American Express card number to Mr. Magerer?

7    MR. SPAGNUOLO: Yes.

8    THE COURT: Okay. What cars do you have an interest in?

9    MR. SPAGNUOLO: Cars?

10   THE COURT: Cars.

11   MR. SPAGNUOLO: Driving you mean, driving cars?  Passenger

12   cars?

13   THE COURT: Is there any other kind of car?

14   MR. SPAGNUOLO: Passenger. I got a Navigator.

15   THE COURT: A Navigator.

16   MR. SPAGNUOLO: Yes.

17   THE COURT: Is that a Lincoln Continental?

18   MR. SPAGNUOLO: Yes.

19   THE COURT: A Lincoln. Is it out here in the parking lot?

20   MR. SPAGNUOLO: Yes.

21   THE COURT: Okay. And is there any reason why I shouldn't

22   turn that right over to Ms. Petit-Brooke -- Brooke-Petit?

23   MR. SPAGNUOLO: She can have it if she wants it.

24   THE COURT: All right. Fair enough.

25   MR. SPAGNUOLO: I owe money on it.

Donna Holmes
(781) 575-8000

```
 1        THE COURT: Turn it over to her as soon as you leave the
 2   courtroom.  Give her the keys, get your stuff out of it. It's
 3   hers. Any car loans?
 4        MR. SPAGNUOLO: Yes.
 5        THE COURT: All right. Other than the Navigator, any car
 6   loans?
 7        MR. SPAGNUOLO: A truck loan.
 8        THE COURT: A truck loan. And what is the truck that you
 9   own?
10        MR. SPAGNUOLO: It's a Ford.
11        THE COURT: A Ford. What year is it?
12        MR. SPAGNUOLO: It's a 2007.
13        THE COURT: Is there any lien on it?
14        MR. SPAGNUOLO: Yes.
15        THE COURT: Okay. Do you want to share with me what the lien
16   is?
17        MR. SPAGNUOLO: I think $20,000.
18        THE COURT: $20,000. What's the value of it?
19        MR. SPAGNUOLO: Probably $20,000, your Honor. I don't know.
20        THE COURT: When was the last time you filed Federal taxes?
21        MR. SPAGNUOLO: Last year.
22        THE COURT: Okay. You're going to get those tax returns to
23   Mr. Magerer for the last five years.
24        MR. SPAGNUOLO: Yes.
25        THE COURT: All right. Get it?  All right.
```

Donna Holmes
(781) 575-8000

1    Do you have cable television?

2    MR. SPAGNUOLO: Yes.

3    THE COURT: And who is your carrier?

4    MR. SPAGNUOLO: Comcast.

5    THE COURT: Comcast. And what package do you have?

6    MR. SPAGNUOLO: Standard package.

7    THE COURT: And how much do you pay a month?

8    MR. SPAGNUOLO: Eighty something dollars I think.

9    THE COURT: Eighty a month? Do you have a computer at home?

10   MR. SPAGNUOLO: I don't use it. I do have one though.

11   THE COURT: Okay. What kind is it?

12   MR. SPAGNUOLO: I don't even know.

13   THE COURT: You don't use it at all?

14   MR. SPAGNUOLO: I don't use the computer.

15   THE COURT: Okay. And do you have a cell phone?

16   MR. SPAGNUOLO: Yes.

17   THE COURT: With what company?

18   MR. SPAGNUOLO: Nextel.

19   THE COURT: What's your telephone number, please?

20   MR. SPAGNUOLO: It's not mine though, your Honor.

21   THE COURT: What is the telephone number that you use when

22   you --

23   MR. SPAGNUOLO: 781-589-6141.

24   THE COURT: All right. Is there any other real property that

25   you have an interest in of any kind either --

Donna Holmes
(781) 575-8000

Appellant App. 89
Spagnuolo

1    MR. SPAGNUOLO: I have no interest in none of them. No.

2    THE COURT: As a trustee of Stoneham Trust, you don't -- and

3    other than those two properties, real -- 8 Concord Road in

4    Stoneham, and 5 North Margin in the north end, no other

5    properties that your --

6    MR. SPAGNUOLO: 52 Beech Street Account Trust.

7    THE COURT: 52 what?

8    MR. SPAGNUOLO: Beech Street.

9    THE COURT: B-E-E-C-H?

10   MR. SPAGNUOLO: Yes.

11   THE COURT: And where is that?

12   MR. SPAGNUOLO: That's in Wareham.

13   THE COURT: Wareham. And what property does that trust own?

14   MR. SPAGNUOLO: Say that again, sir?

15   THE COURT: What property does that trust own? Is there a

16   trust on that or is it --

17   MR. SPAGNUOLO: It's a trust.

18   THE COURT: And what's the name of the trust, 52 Beech

19   Street?

20   MR. SPAGNUOLO: I'm pretty sure, yes.

21   THE COURT: And is there a trust document on that?

22   MR. SPAGNUOLO: Yes.

23   THE COURT: And are you beneficiary of that as well?

24   MR. SPAGNUOLO: No.

25   THE COURT: Okay. Are you beneficiary of any trust?

Donna Holmes
(781) 575-8000

Case I I-I0044 Doc 79 Filed 08/15/11 Entered 08/15/11 12:33:01 Desc Main
Case 1:13-cv-11694-DJC Document 15 Page 1 of 26 Filed 06/23/13 Page 31 of 102

Page | 13

1    MR. SPAGNUOLO: No.

2    THE COURT: Is there any other trust that's been established

3    for your benefit?

4    MR. SPAGNUOLO: No.

5    THE COURT: Any other trust in which you have an interest?

6    MR. SPAGNUOLO: No.

7    THE COURT: Okay. All right.

8    Mr. Magerer, any questions?  This is the first of a series

9    probably of depositions as to assets.  Understood?

10   MR. MAGERER: Yes, Judge.

11   THE COURT: This is just the beginning round, okay.  So

12   don't feel constrained, but we need to establish what -- what

13   Mr. Spagnuolo is going to do to satisfy this judgment.

14   Go ahead.

15   MR. MAGERER: Should I address Mr. Spagnuolo, your Honor?

16   **EXAMINATION OF ROBERT SPAGNUOLO**

17   **BY MR. MAGERER:**

18   MR. MAGERER: Mr. Spagnuolo, do you currently have any

19   investments in the form of securities or stocks or bonds?

20   MR. SPAGNUOLO: No.

21   MR. MAGERER: And do you currently own or maintain any

22   collections such as coin collections, gun collections, stamp

23   collections, or anything of value such as that?

24   MR. SPAGNUOLO: No.

25   MR. MAGERER: And do you have -- do you currently have any

Donna Holmes
(781) 575-8000

Case 11-10844   Doc 79   Filed 08/15/11   Entered 08/15/11 12:33:01   Desc Main
Case 1:13-cv-11694-DJC   Document 15   Filed 08/23/13   Page 32 of 102

Page | 14

```
1   ownership interest meaning owning any stock or any units in
2   what might be referred to as a corporation or an LLC, a
3   limited liability company, or any type of limited partnership
4   or partnership?
5       MR. SPAGNUOLO: No. I have my own liability company. My
6   company is an LLC.
7       MR. MAGERER: And what's the name of your LLC?
8       MR. SPAGNUOLO: Spagnuolo Construction LLC.
9       MR. MAGERER: And, Mr. Spagnuolo, do you have any
10  investments outside of the country, whether that be real
11  estate or any other type of personal property or assets?
12      MR. SPAGNUOLO: No.
13      MR. MAGERER: Your Honor, at this time, other than the other
14  basic questions that you asked, off the top of my head, I'm
15  not sure what else I can ask that would be --
16      THE COURT: All right. So, this is what I'm looking for.
17  Mr. Spagnuolo will turn the keys over to that Lincoln
18  Navigator and he can get a ride with -- with counsel or some
19  other means of getting home tonight. But that Navigator is
20  turned over forthwith, understood?
21      MR. SPAGNUOLO: I don't own it, your Honor.
22      THE COURT: Fair enough. Then just turn it over.
23      MR. SPAGNUOLO: I will, but I don't own it.
24      THE COURT: Who owns it?
25      MR. SPAGNUOLO: The bank owns it.
```

Donna Holmes
(781) 575-8000

Case 11-10844   Doc 79   Filed 08/15/11   Entered 08/15/11 12:33:01   Desc Main
Case 1:13-cv-11694-DJC   Document 15-1   Filed 08/23/13   Page 33 of 102
Document   Page 18 of 28

Page | 15

1    THE COURT: Turn it over, we'll figure it out.

2    MR. SPAGNUOLO: All right.

3    THE COURT: I -- I want to see a writ of attachment as to

4    any personal property that Mr. Spagnuolo has, and any trustee

5    process as to any bank accounts that he's got.

6    I also want to see five years of tax returns turned over to

7    Mr. -- Mr. Magerer by the end of the week.

8    If there are any other assets that you can think of that

9    you, you know, that you may have forgotten this afternoon, I

10   am going to order that you promptly notify Mr. Magerer through

11   counsel. Understood?

12   MR. SPAGNUOLO: Yes.

13   THE COURT: Okay. Okay, because we want this judgment

14   satisfied. We don't want people, you know, walking away from

15   them and thinking that because, you know, they could declare

16   bankruptcy, or some people think that they could, they're

17   going to get away from it. But this is a fraudulent finding

18   by the jury, do you understand that?

19   MR. SPAGNUOLO: Yes.

20   THE COURT: It's not protected by bankruptcy. Are we all on

21   the same page?

22   MR. SPAGNUOLO: Yes.

23   THE COURT: Okay. Very good.

24   Mr. Magerer, I would suggest that you proceed with counsel

25   to get a date for Mr. -- a continued deposition of Mr. -- Mr.

Appellant App. 93
Spagnuolo

Case 11-10844   Doc 79   Filed 08/15/11   Entered 08/15/11 12:33:01   Desc Main
Case 1:13-cv-11694-DJC   Document 15-1   Filed 08/23/13   Page 34 of 102
Document 15-1   Page 190 of 26

Page | 16

1   Spagnuolo. Okay.

2       MR. MAGERER: I will do that, your Honor.

3       Your Honor, may I ask a question on the 93A finding in

4   terms of submitting to you a request for attorney's fees. May

5   I have a week or so to do that?

6       THE COURT: They found no -- let's -- let's -- I would focus

7   on the collection aspects before you start talking about the

8   money. You're not going to get any -- if you put your -- do

9   whatever you want. Yeah, you can have a month, I don't care.

10  But I would focus on the collection efforts and forget about

11  the 93A for the time being.

12      MR. MAGERER: I will take --

13      THE COURT: Because there is going to be nothing left by the

14  time you get around to drafting your 93A Petition.

15      MR. MAGERER: I will take your advice, your Honor.

16      THE COURT: All right. Do whatever you want.

17      Mr. Spagnuolo, thank you very much.

18      Mr. Gabler, it's been a pleasure to work with both of you.

19      MR. GABLER:  Thank you.

20      Your Honor, may I just get clarification on one thing.  You

21  said turn over trust documents.  Did you say by nine o'clock

22  tomorrow morning?

23      THE COURT: No, no, no, no. I'll give him to the end of the

24  week on the trust documents.

25      MR. GABLER: And would they -- they would go to Mr. Magerer?

Donna Holmes
(781) 575-8000

Case 11-10844    Doc 79    Filed 08/15/11    Entered 08/15/11 12:33:01    Desc Main
Case 1:13-cv-11694-DJC    Document 15-1    Filed 08/23/13    Page 35 of 102
Document    Page 20 of 26

Page | 17

1      THE COURT: They go to you through -- to -- to you -- to

2    him through you. Okay.

3      MR. GABLER:  To Mr. Magerer through me.

4      THE COURT: Right. Any bank accounts, any tax returns for

5    the last five years, any mortgage applications, any car loans,

6    any car registrations, any photocopies of credit or charge

7    cards, American Express or for whatever, they go back to Mr.

8    Magerer as soon as possible.  And trust documents as well. And

9    in the meantime, I'm making a specific order, clear and

10    unequivocal, so that everybody understands, Mr. Spagnuolo was

11    not to make one, not one cent of transfer from any bank

12    account, credit charge, or any sort of depository in which he

13    has an interest until further order of the Court. If he does,

14    he's in violation of this order. Okay. Until we can sort this

15    out.

16      Thank you very much.

17      MR. MAGERER: Thank you, your Honor.

18

19

20

21

22

23

24

25                          (Adjourned)

**Donna Holmes**
**(781) 575-8000**

# EXHIBIT C

EXHIBIT C

COMMONWEALTH OF MASSACHUSETTS
THE SUPERIOR COURT

MIDDLESEX, ss.                              CIVIL ACTION NO.: 06-CV-4145-P

EDWINA BROOKE-PETIT,                    )
        Plaintiff,                      )
                                        )
v.                                      )
                                        )
ROBERT SPAGNUOLO,                       )
        Defendant.                      )
                                        )

# SPECIAL JURY VERDICT SLIP

## Breach of Contract

1.    Did the Plaintiff and Defendant enter into an oral or written agreement/contract, pursuant to which the Defendant agreed to provide remodeling and construction services, materials, and supplies (collectively referred to hereafter as the "services") and the Plaintiff agreed to pay for those services as they were provided?

Yes  √        No _____

(If your answer to Question 1 is "Yes," go to Question 2. If your answer to Question 1 is "No," go to Question 3.)

2.    Did the Defendant breach the oral or written agreement/contract with the Plaintiff by failing to provide the services contracted for or by overcharging the Plaintiff?

Yes  √        No _____

(Please proceed to Question 3.)

1

*Appellant App. 97*
*Spagnuolo*

## Fraud

3.  Did the Defendant commit fraud, deceit, and/or misrepresentation by any means, in connection with the services provided by the Defendant to the Plaintiff?

Yes ____✓____    No ____

(Please proceed to Question 4.)

## G.L. c. 142A

4.  Did the Defendant violate Massachusetts General Laws, Chapter 142A, regarding the regulation of home improvement contractors, by any means, in connection with the services provided by the Defendant to the Plaintiff?

Yes ✓____    No ____

(Please proceed to Question 5.)

## Damages (as to Questions 1-4)

5.  What amount of money would fully and fairly compensate the Plaintiff for any injury and/or damage she has sustained because of the Defendant's conduct, based on your answers to Questions 1 through 4.

$ _250,000_
Amount in Figures

_Two Hundred Fifty Thousand and ⁰⁰/₁₀₀_ ____ Dollars.
Amount in Words

2

(If your answer to Question 4 is "yes," you <u>must</u> find that there was a violation of Massachusetts General Laws, Chapter 93A and proceed to Question 7. If your answer to Question 4 is "no," please proceed to Question 6.)

<u>G.L. c. 93A, §9</u>

6.    (a)  Did the Plaintiff send an adequate demand letter to the Defendant at least 30 days before November 20, 2006?

Yes _____        No _____

(If your answer to Question 6(a) is "Yes," proceed to Question 6(b). If your answer to Question 6(a) is "No," STOP HERE, sign this Verdict Slip, and return to the courtroom.)

      (b)  Was the Defendant engaged in trade or commerce when he entered into an agreement with the Plaintiff to provide remodeling and construction services, materials, and supplies (collectively referred to hereafter as the "services") to the Plaintiff and/or was the Defendant engaged in trade or commerce in the course of providing and performing any such services for the Plaintiff?

Yes _____        No _____

(If your answer to Question 6(b) is "Yes," go to Question 6(c). If your answer to Question 6(b) is "No," STOP HERE, sign this Verdict Slip, and return to the courtroom.)

      (c)  Did the Defendant act unfairly or deceptively when he entered into an agreement with the Plaintiff to provide the

3

services to Plaintiff and/or did the Defendant act unfairly or deceptively in the course of providing and performing any such services for the Plaintiff?

Yes _____    No _____

(If your answer to Question 6(c) is "Yes," go to Question 6(d). If your answer to Question 6(c) is "No," STOP HERE, sign this Verdict Slip, and return to the courtroom.)

(d)  Did the unfair or deceptive acts that the Defendant did cause injury or loss to the Plaintiff?

Yes _____    No _____

(If your answer to Question 6(d) is "Yes," go to Question 7. If your answer to Question 6(d) is "No," STOP HERE, sign this Verdict Slip, and return to the courtroom.)

7.  In finding a violation of Massachusetts General Laws, Chapter 93A, you _may_ award the Plaintiff double or triple the amount(s) awarded to the Plaintiff in response to Question 5; therefore, what amount of money do you award to the Plaintiff, as a result of the Defendant's violation of Massachusetts General Laws, Chapter 93A, which amount can be either double or triple the amount(s) awarded in response to Question 5?

$ 
   Amount in Figures

Zero _____ Dollars.
                        Amount in Words

(STOP HERE, sign this Verdict Slip, and return to the courtroom.)

4

Signature of Jury Foreperson

Robert E Shaughnessy JR

Printed Name of Jury Foreperson

August 24, 2010

5

# EXHIBIT D

**EXHIBIT D**

Volume I
Pages: 1-62
Exhibits: 0

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.                      SUPERIOR COURT DEPARTMENT
                                    OF THE TRIAL COURT

*****************************
EDWINA BROOKE-PETIT            *
     Plaintiff                 *
                               *
v.                             *  DOCKET NUMBER MICV2006-04145
                               *
ROBERT SPAGNUOLO               *
     Defendant                 *
                               *
*****************************

JURY INSTRUCTIONS ONLY
BEFORE THE HONORABLE DENNIS J. CURRAN

Woburn, Massachusetts
August 24, 2010

Recording produced by digital audio recording system. Transcript
produced by Approved Court Transcriber, Donna Holmes

### I N D E X

| WITNESS | DIRECT | CROSS | REDIRECT | RECROSS |
|---------|--------|-------|----------|---------|

None - Jury Instructions Only

Appellant App. 104
Spagnuolo

1          <u>P R O C E E D I N G S</u>

2    (Court called to order.)

3        THE COURT: Ladies and gentlemen of the jury, you're about

4    to begin your final duty which is to decide the factual issues

5    in this case.  Before you do that, I'm going to instruct you

6    on the law.

7        As I said at the outset of this case, my function as the

8    Judge in this case is to make sure that -- that this trial --

9    trial was conducted fairly, orderly, and efficiently.  It's

10   also my responsibility to rule on what you may consider as

11   evidence and to instruct to you on the law as it applies to

12   this case.

13       It is your duty, in fact your sworn duty, as jurors to

14   accept the law as I state it to you.  Consider all of my

15   instructions as a whole.  Don't ignore any instruction.  Don't

16   give special attention to one in particular instruction.

17   Follow the law as I give it to you whether you agree with it

18   or not.

19       It's the duty of both lawyers in this case to object when

20   the other side offered evidence that that lawyer believed was

21   not admissible under our rules of evidence.  They also had an

22   obligation to be -- speak to me at sidebar about questions of

23   law which the law requires me to rule on outside of your

24   hearing.

25       Now, the purpose, contrary to what you see on Hollywood

1    drama and television programs, the purpose of such objections
2    and sidebar conferences is not to play a shell game with the
3    evidence.  It's not to keep relevant information from you.
4    Actually, it's just the opposite.  To make sure what you hear
5    is relevant to this case and that the evidence is presented in
6    a way to give you a fair opportunity to evaluate its worth, so
7    what I'm saying is, in short, don't draw any inference
8    favorable or unfavorable toward either lawyer or their client
9    for objecting to proposed evidence or requesting sidebar
10   conferences.  That's the professional responsibility of the
11   lawyer.
12       Let me talk to you about your function.  You determine the
13   facts of the case.  You're the sole and exclusive judges of
14   the facts.  You alone determine what evidence to accept, how
15   important any evidence is that you do accept and what
16   conclusions to draw from all the believable evidence.  Apply
17   the law as I give it to you to the facts -- I'm going to have
18   to give you some medicine or something here.  Take -- take
19   whatever you need.
20       UNIDENTIFIED ATTORNEY: I'm sorry, your Honor.
21       THE COURT: It's all right.  It's all right.  It's just that
22   it's kind of an important part of the trial.  Take whatever he
23   needs.
24       You alone determine what evidence to accept, how important
25   any evidence is that you do accept, and what conclusions to

1    draw from all the believable evidence.  Apply the law as I

2    give it to you to the facts as you determine them to be in

3    order to decide whether Ms. Brooke-Petit has proven her case.

4        Now, determine the facts based solely on a fair

5    consideration of the evidence.  Be completely fair and

6    impartial.  Don't be swayed by prejudice, sympathy, likes or

7    dislikes towards either side.  Don't decide this case based on

8    anything you may have seen or heard out -- outside of this

9    courtroom, and don't engage in any guesswork about any

10   unanswered questions that remain in your mind or speculate

11   what the real facts may or may not have been if there weren't

12   introduced into evidence in this case.

13       Please also don't consider anything that I've said or done

14   during the course of the trial in ruling on motions or

15   objections or comments to the lawyers or in questions to a

16   witness, I think I asked one question to one witness just to

17   clarify something that I thought may have been confusing to

18   all of us, or in setting forth the law in these instructions

19   as any opinion that I have about what your verdict ought to

20   be.  Please do not believe that I have any opinion about what

21   the facts of this case are.  I have not read -- in truth, I

22   have not read the exhibits.  There is -- there's many, many,

23   many, many exhibits, many, many, many photographs and -- and

24   almost none of them have I studied, so I -- I really do not

25   have any opinion about the case.  That's your province.

1    That's your constitutional responsibility and that is your

2    duty, not mine.

3        Let's talk about what constitutes evidence.  Decide this

4    case, as I've said several times now, based solely on the

5    evidence in this case, not from suspicion, not from

6    conjecture, and not from matters not admitted into evidence.

7        Now, the evidence consists of the testimony of witnesses as

8    you recall it and any documents or photographs or other things

9    that have been marked as exhibits, and you'll have all of

10   those with you in the jury deliberation room.  There'll

11   actually probably be a little bit of a pause before you see

12   those exhibits because the lawyers want to put them in order.

13   We have to verify that they're all accounted for and then we

14   introduce them to you through the Court Officer to you in the

15   jury deliberation room.

16       Now, you alone determine the weight, the value, and

17   importance of the testimony and the exhibits to help you make

18   your ultimate judgment about whether the plaintiff has proven

19   her case.

20       Now, we in the legal profession love paper.  We actually

21   all should own stock in paper companies, I'm convinced.  But -

22   - and I'm convinced also that we -- we love it too much, but

23   just because lawyers love paper and -- doesn't mean that you

24   should fall in love with paper also.  A -- in other words,

25   what I'm trying to tell you is just because something's on a

1    piece of paper, doesn't mean you have to believe it. You can

2    believe it, you don't have to believe it. You can believe

3    some of what's on it or not. It's your call. It's entirely

4    your call.

5        Now, the quality or strength of the proof isn't determined

6    by the sheer volume of exhibits or the number of witnesses or

7    evidence. It's rather the weight of the evidence, the

8    strength intending to prove the issue that's at stake that's

9    important. You can find, for example, that a smaller number

10   of witnesses who testify to a particular fact are more

11   believable than a larger number of witnesses who testify to

12   the opposite or vice versa.

13       Now, as I said at the beginning, some things are during --

14   occur during the course of the trial are not evidence, and

15   don't consider them as evidence when you decide the facts of

16   the case.

17       A lawyer's question to a witness, not evidence. Only the

18   answer that comes out of the mouth of the witness is evidence.

19       Don't consider any answer that I told you was stricken from

20   the record. I may have told you to strike it or disregard it

21   meaning don't consider such answers.

22       Anything that you may have seen or heard outside of the

23   courtroom when it wasn't in session is not evidence.

24       Opening statements, not evidence.

25       Closing arguments of the lawyers, not evidence. In fact,

1   nothing that's said by either lawyer or myself for that matter
2   constitutes evidence.
3       My instructions on the law, not evidence.  And if you or I
4   have referred to evidence in a way that -- I mean the lawyers
5   or I have referred to evidence in a way that differs from your
6   memory, it is your collective recollection that controls.
7       Consider the evidence as a whole.  Don't make up your mind
8   about what the verdict should be until -- should be until
9   after you've gone into the jury deliberation room and
10  discussed this case with your fellow jurors.  Keep an open
11  mind until that point.
12      Let's talk about the two kinds of evidence.  If you take
13  anything away from this several days' experience, take this.
14  Evidence comes in in two forms.  You may hear some people on
15  TV who really don't know what they're talking about say, well,
16  Jack, that case was all circumstantial.  I'm imitating some
17  reporter on a scene usually on a case in a California.  They
18  always seem to be in California.  Maybe it's more interesting
19  to live there.  I don't know, but they do seem to be in
20  California.  So the point is that these talking heads on
21  television will say well that was all circumstantial as if
22  you, the listener on the TV or anybody else, should completely
23  disregard a case because it's a circumstantial evidence case.
24  Absolutely, totally, completely, utterly wrong.
25      There are in fact two ways of move -- moving a case, of

1   proving a case.  One is direct evidence.

2       Direct evidence is pretty simple.  It's what someone claims

3   to have seen or testifies directly about a fact to be proven

4   based on what they claim to have seen or heard or felt with

5   their own five senses.  Really, that's what direct evidence

6   is.  Very simple.  And really the only question for you on

7   direct evidence is do you believe the witness.  Do you believe

8   the witness?

9       Now, what circumstantial evidence -- it's -- it's where the

10  witness cannot testify directly about the fact to be proven

11  but your presented with evidence of other facts, and then

12  you're asked to draw reasonable inferences or conclusions

13  about the fact to be proven.  All of that legal language can

14  be summed up in the following example.

15      You were with us all day yesterday.  Chances are you just

16  didn't have a chance, unless you live in the neighborhood,

17  didn't have a chance to get home during lunch.  Your mail was

18  not there in the morning.  It was, you know, the long weekend.

19  It was the weekend so chances are you -- you obviously don't

20  get any mail on Sunday, but no mail in the morning.  Mail at

21  the end of the day.  You have no direct evidence you observed

22  the letter carrier drop off the mail, but your reasonable

23  inferences based on your experience that usually, if your

24  house is like mine, the mail gets delivered between 10 and

25  2:30 just about every day.  So there's no direct evidence that

1    you've observed the letter carrier.  Circumstantial evidence.

2    Wasn't there in the morning, was there in the evening,

3    reasonable inference is that it was delivered.

4    There are, however, two rules to keep in mind about

5    circumstantial evidence.  The first is that you can draw

6    inferences or conclusions only from facts that have been

7    proven to you, and the second rule is that any inference or

8    conclusion that you do draw must be reasonable and natural

9    based on your common sense and life experience.  Your common

10   sense and life experience.

11   Now, you'll hear me use that phrase a couple more times

12   before I'm done.  Common sense and life experience.

13   What's an inference?  Well, the law defines it as a

14   permissible deduction you may make from evidence that you've

15   accepted as believable.  Inferences are things that you do

16   every day.  Excuse me.  Little steps in reasoning.  You take

17   some known information, you apply your life experience to it,

18   and then you draw a conclusion.  You may draw an inference

19   even if it isn't necessary or inescapable so long as it is

20   reasonable and warranted by the evidence.

21   Let's talk about the credibility of witnesses.  It's

22   obviously your duty to decide disputed questions of fact.  You

23   have to determine which witnesses to believe and how much

24   weight or importance to give their testimony.  Give the

25   testimony of each witness whatever degree of belief and

1    importance you Judge it's fairly entitled to receive.  You are

2    the sole judges, the sole judges of the credibility or

3    believability of the witnesses.  And if there are conflicts in

4    their testimony, obviously this is an adversary process.  Two

5    sides to a story if you will.  It is your function to resolve

6    those conflicts and determine where the truth lies.  You

7    determine where the truth lies.

8        Now ,you can believe everything a witness says, you can

9    believe most of it, you can believe half of it, you can

10   believe some of it, you can believe a little bit of it, you

11   can believe none of it.  It's your call.  It's entirely your

12   call.  In deciding whether to believe a witness and how much

13   importance to give a witness's testimony, look at all the

14   evidence, drawing upon your common sense and life experience.

15       Often as you know, and I know, what -- often it isn't what

16   somebody says but how they say it to give you a clue to -- as

17   to whether you should accept their version of an event as

18   believable.

19       Now, some of the things you can consider are a witness's

20   appearance, their demeanor on the witness stand, frankness or

21   lack of frankness, whether the testimony is reasonable or

22   unreasonable, probable or improbable.  You can also take into

23   account how good an opportunity the witness had to observe the

24   facts about which he or she testifies, their degree of

25   intelligence and whether their memory seems accurate.  Those

1    are some of the tools to think about.

2        You may also consider a witness's motive for testifying,

3    whether they display any bias in testifying, whether or not

4    they have any interest in the outcome of the case.

5        Now, just because a witness has some interest in the

6    outcome of a case doesn't mean that that witness -- witness

7    isn't trying to tell you the truth as he or she recalls or

8    believes it to be but -- but a witness's interest is a factor

9    that you may consider with all the other factors in deciding

10   issues of credibility.

11       Now, where there are discrepancies or inconsistencies in a

12   witness testimony or between the testimony of different

13   witnesses, that may or may not cause you to discredit such

14   testimony.  Why?  People -- the folks that come in are not

15   professional witnesses.  They're laypeople.  They get nervous,

16   they're anxious, this is a very formal atmosphere.  I don't

17   know how you feel now, but I'm sure the first day or first

18   hour, maybe you had butter -- had butterflies in your stomach,

19   you were a little -- felt a little bit ill -- ill at ease, so

20   too witnesses do often times, and sometimes they're just --

21   people just forget things or they get confused.  Sometimes

22   people remember things differently.  Sometimes, however,

23   people lie.

24       In weighing such discrepancies, you should consider whether

25   they involve important facts or only minor details and whether

1   the discrepancies result from innocent lapses of memory or

2   intentional falsehoods.

3       Now, there's one more point to make about witnesses, and

4   that is expert witnesses.  You heard from what expert

5   witnesses, that's people who have -- that is -- those are,

6   excuse me, people who have specialized training or experience

7   in a particular field.  Generally -- generally speaking in our

8   Courts, whether it be a civil case or a criminal case,

9   witnesses may testify only to facts within their personal

10  knowledge.  That is things they've personally seen or heard or

11  felt.

12      In a small number of cases, or a variety of cases I should

13  say, issues that arise that are beyond the can or the

14  experience of -- of laypeople, and in those kinds of cases, we

15  allow a person with specialized training or experience, called

16  the expert witness, to testify, and they'll not only testify

17  to facts, but they're also permitted to testify to their

18  opinion and the reasons for those opinions on issues that are

19  within the witness's field of expertise and are relevant and

20  material to the case.

21      Now, because a particular witness has -- witness has

22  specialized training and experience in that field, doesn't put

23  that witness on a higher level or plain that any other

24  witness, and treat the so called expert witness just like you

25  would treat any other witness.

1    In other words, as with other witnesses, it's completely up

2    to you to decide whether you accept the testimony of an expert

3    witness including the opinions the witness gave.  It's

4    entirely also up to you decide whether you accept the facts

5    upon which the expert relied and what conclusions, if any,

6    that he -- you can draw from the expert's testimony.

7    You're free to reject the testimony and opinion of such a

8    witness in whole or in part.  If you determine that the

9    witness's opinion is not based on sufficient education and

10    experience or the testimony of the witness was motivated by

11    some bias and interest in the outcome of the case, you may

12    consider those factors as well.

13    You must also, as I've been explaining to you, keep firmly

14    in mind that you alone, you alone, determine what the facts

15    are.  If you conclude that an expert's opinion isn't based on

16    the facts as you find those facts to be, you may reject the

17    testimony and opinion of the expert in whole or in part.

18    Remember that expert witnesses do not decide cases.  Jurors

19    do.

20    And in the final analysis, an expert witness is just like

21    any other witness in the sense that you alone make the

22    judgment about how much credibility and weight to give the

23    expert's testimony and what conclusions to draw from that

24    testimony.

25    Let's shift for a moment to the burden of proof.

1    In a civil case, as I've said before, Ms. Edwina Brooke-

2  Petit has the burden of proving her case by a preponderance of

3  the evidence.  As I said before, this is a less strict

4  standard than the standard in the criminal case where the

5  prosecution or the government must prove its case beyond a

6  reasonable doubt, that -- that proof standard does not apply

7  here.  It is not a standard of proof beyond a reasonable

8  doubt.

9    In a civil case such as this, the plaintiff is not required

10  to prove her case beyond a reasonable doubt.  Instead, she

11  meets her burden when she shows it to be fact -- truth -- true

12  by a preponderance of the evidence, by a preponderance of the

13  evidence.  That means such evidence which, when compared and

14  considered with any opposed to it, produces in your mind a

15  belief that what is sought to be proven is more probably true

16  than not true.

17    So when you think of the phase preponderance of the

18  evidence, it's just legal language, mumbo jumbo if you will or

19  -- to -- to mean more likely than not.  We use all these fancy

20  phrases, but we're trying to basically speak English here.

21  More probably true than not true that -- that's what we're

22  talking about.

23    Now, a matter has been proven by a preponderance of the

24  evidence, meaning more likely than not, if you determine,

25  after you've weighed all the evidence, the matter is more

1    probably true than not true.  So if you were to put the

2    credible evidence on the opposite sides of the scales of

3    justice, for example, Ms. Edwina Brooke-Petit must prove

4    enough evidence to skip those scales ever so slightly in her

5    balance.  If she fails to do this -- if she fails to do this,

6    you must return a verdict for the defendant.

7        Now, those are the generic or general instructions that I

8    give pretty much at the beginning of every civil case.  I'm

9    going to turn, if I may, to a discussion of what I call the

10   case specific instructions on the breach of contract issue, on

11   the home improvement contract issue, and on the Chapter 93A or

12   consumer protection or unfair or deceptive acts statute.

13       As for the lat -- latter two theories of recovery for the

14   plaintiff, meaning the home improvement statute or the Chapter

15   93A, let me tell you in a nutshell what I'm referring to.

16       Those are statutes.  Statute is a law passed by the

17   legislature, the general -- they call it the General Court in

18   Massachusetts.  All of those general laws are contained in

19   this green set of books behind me, and just to give you a --

20   you -- you may see, for example, a District Attorney or -- or

21   an Attorney General or a lawyer giving a press conference

22   about some legal issue.  Sometimes you'll see this green set

23   of books behind them.  These are the general laws of

24   Massachusetts.  They start with Chapter 1, they finish with

25   Chapter 282.

1    Chapter 1, just to give you a -- a two second overview of
2    this, deals with the powers of the government, the governors
3    powers, the lieutenant governor, the general -- Attorney
4    General, Auditor, and so forth, and then you span to chapter
5    thirty-nine and forty and forty-one deals with cities and
6    towns, taxation.  I never really touch that.  Chapters fifty-
7    eight, nine, and sixty, down here, sometimes you'll hear well
8    that's a Chapter 90 violation.  Chapter 90 is the book.
9    Chapter 90 on registry violations, moving violations.
10   Hopefully none of you know anything about that, okay.
11       Public health violations are Chapter 111, public safety
12   143-148, and then you get the really juicy stuff, the criminal
13   stuff, which is chapter -- Chapter 263 to 5 and the
14   punishments are in 268.  Just a -- a parenthetical note, when
15   I was a kid, a lawyer was throwing out -- who was friendly
16   with my dad, my dad was not a lawyer, but he -- he knew him
17   and he gave him a book.  It had the chapters -- the
18   punishments on the laws, like the criminal laws, Chapter 282.
19   Well, that's the one book out of all of them that he gave.  I
20   was only like fourteen, and I used to read that thing.  How
21   geeky can a kid be at fourteen to read those because they had
22   all these weird laws like dueling, you know, and mayhem, and I
23   just -- you know, I was just a kid.  You know, I thought these
24   -- this is a cool just to read this stuff, so that's how geeky
25   I was as a kid, not -- not that I'm any changed or anything

1    but --

2        So in any event, those are -- those are the general laws,

3    and so when I refer to the home improvement statute, that's

4    where it's coming from is Chapter 142A of the general laws.

5        Chapter 93A deals with unfair or deceptive acts and

6    practices, and again, that's from the general laws, but let me

7    -- let me shift as I -- if I may to the first theory of

8    recovery of the plaintiff and that is on breach of contract.

9    But let me -- let me give you the introduction first of all.

10        I may refer to Ms. -- Ms. Brooke-Petit -- Petit as the

11    plaintiff, and I'll refer to the defendant as Mr. Spagnuolo.

12    My goal in -- in presenting these instructions is to ensure

13    that you treat the parties in a fair and impartial way.

14        Ms. Brooke-Petit has brought this lawsuit against Mr.

15    Spagnuolo on three different theories of recovery or causes of

16    action or claims, whatever you want to call it.  They also

17    center on Mr. Spagnuolo's alleged failure to perform

18    construction or remodeling services at her home at 131

19    Timberland Drive in Mashpee, Massachusetts.

20        Her claims include the following.

21        One, a breach of contract against Mr. Spagnuolo.

22        Two, a claim of -- for fraud against Mr. Spagnuolo.

23        And, three, a claim under Chapter 142A which is entitled

24    the regulation of home improvement contractors.

25        We'll also be talking about Chapter 93A down the line, but

1    I don't want to address that at this point, so let me -- let
2    me discuss with you the legal elements of these three claims,
3    and the law requires that you as jurors apply the evidence as
4    presented during the course of the trial.
5        Under the general guidelines that I presented to you, you
6    must apply the law -- the evidence to the law and determine
7    what -- whether Mr. Spagnuolo was liable to Ms. Brooke-Petit
8    for damages resulting from the breach of contract and/or fraud
9    arising out of the construction services provided to the
10   plaintiff, Brooke-Petit, but Mr. Spagnuolo.
11       Now, once you've considered all of Ms. Brooke-Petit --
12   Petit's claims by apply the evidence presented in this case to
13   the law, if you find Mr. Spagnuolo liable on any of these
14   claims, you may award Ms. Brooke-Petit compensatory damages,
15   and I'll define that a little more, but not punitive damages.
16   Not punitive damages.
17       Let me shift to the subject of breach of contract.  Breach
18   of contract.  Generally, a breach of contract is a failure to
19   comply with one or more terms of a contract.  A breach of
20   contract is a failure to comply with one or more terms of the
21   contract.  In order to recover breach for contract, the non-
22   breaching party, and that here is alleged to be Ms. Brooke-
23   Petit, must have completely performed her obligations.  Where
24   one party to a contract has failed to perform her obligations,
25   then as a matter of law, the other party is thereafter excused

1    from performing his contractual obligations.

2        Now, there are four elements that each of which must be

3    proven to you.  When you hear me say the word elements, think

4    of this, that each element is -- is modified or define and you

5    must find that element to be true by a preponderance of the

6    elements -- evidence, in other words, more likely than not.

7    So when I give you an element, and I'm going to say there's

8    four elements to breach of contract, each one of those

9    elements must be proven by -- to you to your satisfaction as

10   the jury by a preponderance of the evidence, meaning more

11   likely than not, so that standard of proof applies to each

12   element.  You get it.

13       There are four elements you must find.

14       One, there's a contract.  Pretty simple.

15       Two, the -- I don't mean pretty simple that you can find

16   that.  I mean pretty simple in terms of what -- what you have

17   to do, that there is a contract, and you have to find that.

18       Two, that the party performed its obligations under the

19   contract or is excused from performance.  So number two is

20   performance of the obligations or excused from performance.

21       Three, that the other party breached the contract.

22       And, four, that the non-breaching party suffered damages as

23   a result of the breach of contract.

24       So four things.  Cne, breach of contract.

25       Two, that the party performed its obligations under the

1   contract or was excused from performing.

2       Three, the other party breached the contract.

3       And, four, that the non-breaching party suffered damages or

4   harms or injuries or financial loss, whatever you want to call

5   it.  Damages is a -- kind of a vague word we use to mean like

6   financial losses or harm or injury, some -- sometimes they

7   refer to them as injury, but there's no -- no physical injury

8   here, no personal injury like in a motor vehicle car case, a

9   motor vehicle accident.  It's -- we're talking about financial

10  loss is what we're really talking about.  So those are the

11  four elements.

12      Now, in Massachusetts let me tell you that there is an

13  implied covenant of good faith and fair dealing between

14  parties to a contract.  It's an implied covenant of good faith

15  and fair dealing to every -- every contract.  The implied

16  covenant of good faith, and fair dealing means that neither

17  party may do anything that will have the effect of destroying

18  or injuring the right of the other party to receive the fruits

19  of the contract.

20      If the plaintiff has failed to act in good faith and has

21  breached its implied covenant of good faith and fair dealing,

22  the plaintiff cannot recover for subsequent breach of contract

23  by the defendant.

24      So let's turn to the first element.  Was there a contract?

25  You must answer this question as to whether this contract or

1   agreement between Ms. Brooke-Petit and Mr. Spagnuolo as to the

2   construction -- construction or remodeling project or services

3   at 131 Timberlane Drive in Mashpee.

4       Now, what's a contract?  A contract exists when the parties

5   agree to the terms and conditions of mutual promises.  It

6   exists when the parties agree to the terms and conditions of

7   mutual promises.

8       By the way, let me just add parenthetically, remember when

9   we were kids, you'd -- you'd see -- hear these comedy

10  routines, will the party of the first part and the party of

11  the second part and all that stuff, actually that -- that's

12  like about a hundred years ago.  I still think that we're

13  going to see a contract with those terms, but we don't -- we

14  don't do that in case any of you are waiting for me to start

15  talking that way.

16      So a contract exists when the parties agree to the terms

17  and conditions of mutual promises.  The contract may be based

18  on oral or written promises.  This is often referred to -- to

19  as a meeting of the minds, a meeting of the minds.

20      Mutuality means that the parties communicated their

21  agreement to the terms and conditions in the same sense and at

22  the same -- at -- at the time of the alleged contract.

23      There's no contract formed if only one party intends to be

24  bound or if the parties intend to be bound but only at a later

25  date.  Agreement can be shown by a written or spoken words,

1    written or spoken words, or by some act or omission which is

2    intended to communicate agreement, and which indicates to the

3    other party that it is intended to communicate agreement.  The

4    law presumes that a person intends the natural and probable

5    consequences of his or her acts.

6        An unexpressed intent to be bound or contract doesn't

7    create a binding contract.

8        In order to determine whether a binding contract existed in

9    this case, decide whether the parties intended to be agreed by

10   the contract's terms as of the time of the contract.

11       Now, the contract terms, that's number two.  If you

12   determine that a binding contract was formed, you must

13   determine the terms of the contract.  Now, the terms of the

14   contract are those to which the parties mutually assented with

15   reasonable certainty.

16       Let's move to the subject of the time for performance.

17   When a contract doesn't specify the time for performance, a

18   party has a reasonable period of time in which to perform, a

19   reasonable period of which -- in -- of time within which to

20   perform.

21       Let's talk about performance.  When a contract requires the

22   defendant to render performance to the satisfaction of the

23   plaintiff, the standard of satisfaction is whether a

24   reasonable person would be satisfied in view of all the

25   circumstances, whether a reasonable person would be satisfied

1    in view of all the circumstances.

2        Let's talk about performance by the defendant.  There can

3    be no breach of contract where the defendant has fully

4    performed.  Where a plaintiff has accepted the benefit of the

5    defendant's full performance, the plaintiff cannot be heard to

6    complain about the performance.

7        Where a person or entity contracts to perform services for

8    another, it implicitly promises to perform the services in a

9    reasonably diligent, skillful, workmanlike, and adequate

10   manner.  So where a person contracts to perform services for

11   somebody else, it implicitly promises to perform the services

12   in a reasonably diligent, skillful, workmanlike, and adequate

13   manner.  The contract may be found to be breached if it was

14   performed negligently.

15       A party cannot refuse to perform a contract in anticipation

16   of a breach by the other party to a contract.

17       Let's talk about full performance.  To cover -- to recover

18   for a full -- for a breach of contract, a plaintiff, and here

19   that's Ms. Brooke-Petit, must establish her full and complete

20   performance of all obligations under the contract.  However, a

21   material breach of the contract by one party excuses further

22   performance by the non-breaching party.

23       A material breach of the contract by one party excuses

24   further performance by the non-breaching party.

25       If you find that the plaintiff, Ms. Brooke-Petit, had an

1    If the plaintiff has not proven that the defendant breached

2    the contract, then you will not consider the issue of damages.

3    If the defendant, Mr. Spagnuolo, did breach the contract,

4    you must then decide the amount of the plaintiff's damages, if

5    any.

6    Before the plaintiff can recover damages under any theory

7    of recovery, she must prove the defendant's breach caused

8    those damages.

9    Now, the basic principle of contract damages is that the

10    injured party should be put in as good a position as if the

11    other party had fully performed its obligations under the

12    contract.  So the basic principle is to put the person in as

13    good a position as if the other party had fully performed its

14    obligations under the contract.

15    In order to recover damages against Mr. Spagnuolo, Ms.

16    Brooke-Petit must demonstrate that the damages complained of

17    were caused by Mr. Spagnuolo's conduct.  Now, if the damages

18    were caused by Ms. Petit or by somebody other than the

19    defendant, the plaintiff, Ms. Petit, is not -- Brooke-Petit is

20    not entitled to damages from Mr. Spagnuolo.

21    Now, Ms. Brooke-Petit is entitled to recover damages

22    sufficient to give her the benefit of the contract bargain as

23    long as those damages are reasonably proven.  In other words,

24    she's entitled to those damage that would put her in a

25    position to obtain what she bargained to obtain, such as

1    compensation in money that can be computed by rational methods

2    upon a firm factual basis.

3        Now, an injured party, Ms. Brooke-Petit here is alleged to

4    have been that party, is entitled to recover both general and

5    specific damages.  What are general damages?  Those which flow

6    according to common understanding as the natural and probable

7    consequence of a breach.

8        Consequential damages result from special circumstances

9    known or presumed to have been known to the parties.

10       Now, in a construction contract, the measure of damages is

11   where the builder fails to complete a construction job, and it

12   should be measured by the difference between the value of the

13   job -- of the work in disrepair and the value of the subject

14   structure if satisfactorily completed according to the

15   contract.  So the measure of damages awarded in a construction

16   contract should be, where the builder fails to complete a

17   construction job should be measured by the difference between

18   the value of the -- value of the work in disrepair and the

19   value of the subject structure if satisfactorily completed

20   according to the contract.

21       Now, let's move on to a subject, the subject of fraud.  So

22   we've completed our discussion on breach of contract.  We move

23   on to the allegation of fraud.  And what are the elements of

24   fraud?  In this case, Ms. Brooke-Petit claims the defendant,

25   Spagnuolo, misrepresented important facts including, but not

1   limited to, the cost to do the construction remodeling

2   services at her home at Mashpee, the materials to be used, the

3   subcontractor work, the payments made to them, and the actual

4   construction or remodeling work done on the plaintiff's

5   property which the plaintiff says she would not have done if

6   she had known the true state of affairs. As a result, Ms.

7   Brooke-Petit claims that she was financially harmed.

8      Mr. Spagnuolo, for his part, denies that he misrepresented

9   any important fact to Ms. Brooke-Petit.

10      Ms. Brooke-Petit may recover money damages from Mr.

11  Spagnuolo if and only if she proves by a fair preponderance of

12  the evidence, meaning again more likely than not by credible

13  evidence, the following five factors. So five elements to a

14  fraud claim. Five elements to a fraud claim.

15      One, that Mr. Spagnuolo made a false statement or

16  statements to the plaintiff, and that statement or -- or those

17  statements concerned some fact that a reasonable person would

18  consider important to the decision that the plaintiff was

19  about to make. So fact number -- I mean element number one is

20  that the defendant, Mr. Spagnuolo, made a false statement or

21  statements to the plaintiff -- plaintiff and that statement or

22  those statements concerned some fact that a reasonable person

23  would consider important to the -- to the decision that Ms.

24  Brooke-Petit was about to make.

25      Now what is a -- a material fact?  A material fact -- now,

1  you'll hear me -- hear me use -- hear me use that word

2  material a couple more times.  A material -- material fact is

3  a fact that a reasonable person would attach importance to in

4  determining his or her choice of action in the transaction.  A

5  fact is material if a reasonable person would attach

6  importance to it in determining his or her choice of action in

7  the transaction in question.

8      Two, the second element that again -- again must be proven

9  by a preponderance of the evidence is that when Mr. Spagnuolo

10  made the statement, the defendant either knew that the

11  statement was false or recklessly made the statement by

12  willfully disregarding its truth or falsity.  So two is that

13  when Mr. Spagnuolo allegedly made the statement, he knew

14  either that the statement was false or he recklessly made the

15  statement by willfully disregarding its truth or falsity.

16      Third element, Mr. Spagnuolo made the false statement with

17  the intention that the plaintiff would rely on that statement

18  in making her decision.  So three is that -- it is called

19  reliance.  That's where the -- Mr. Spagnuolo allegedly made

20  the false statement with the intention that Ms. Brooke-Petit

21  would rely on that statement in making her decision.

22      Four, that in making her decision, Ms. Brooke-Petit did in

23  fact rely upon the defendant's statement as true and that all

24  -- her reliance was reasonable under the circumstances.

25      And, five, that the plaintiff suffered some financial loss

1    as a result of relying on the defendant's false statement.

2        So usually the -- the last element in each one of these

3    theories of recovery is that you have to show damages, and

4    they have to -- financial damages, and they have to be related

5    to the -- to the actions of the defendant.  That's always --

6    almost always last -- the last element.  I think it is the

7    last element.

8        So if the plaintiff has proven these five elements by a

9    preponderance of the evidence, your verdict will be for the

10   plaintiff, and you must then go on to determine the amount of

11   money damages to be awarded her.

12       If the plaintiff has failed to prove any one of these five

13   elements, then your verdict must be for the defendant.

14       Now, before I move further -- off of discussion for that,

15   does anybody want me to define any of these elements again?  I

16   -- there's no harm here.  No -- no harm, no foul we used to

17   say.  No?  Okay.

18       All right.  So let's talk about a false statement --

19   anybody?  No.  Okay.

20       False statement of fact, the defendant can be held

21   responsible for an intentional or a reckless misrepresentation

22   about an existing fact.  A fact, as opposed to an opinion,

23   estimate, or intention, is a statement whose truth or falsity

24   is capable of being determined with certainty.  Generally, Mr.

25   Spagnuolo cannot be held responsible for a statement about a

1    future event, although there is an exception to that rule if

2    the defendant had greater expertise about a particular future

3    -- future event that was being discussed.

4        Mr. Spagnuolo can be held responsible for a

5    misrepresentation about his opinion, his estimate or

6    intention, but only if he intentionally misrepresented his

7    opinion, estimate or intention.

8        Let's talk about false statements of facts or opinions.

9    Fraud may be perpetrated by an implied as well as by an

10   expressed representation.  Fraud may be perpetrated by an

11   implied as well as by an expressed interpretation --

12   representation, excuse me.  A statement that in form is one of

13   opinion in some circumstances may be reasonably interpreted by

14   the recipient or listener to imply that the maker of the

15   statement knows facts that would justify the opinion.  In this

16   case, it's for you as the jury to determine whether the

17   statement made by Mr. Spagnuolo was one of fact or opinion.

18       Now, let's talk about false statements and the nature of

19   half-truths and silence or conduct or statements calculated to

20   mislead.  Mr. Spagnuolo can be held responsible not only for

21   outright untrue statements but also for giving misleading,

22   partial information or for telling half-truths.  The defendant

23   cannot, however, be held responsible to the plaintiff based

24   solely on his silence about a matter about which he wasn't

25   asked.

1    Now, although Mr. Spagnuolo has -- was under no duty to

2    volunteer information, if -- if he spoke on a given point,

3    either voluntarily or at the plaintiff's request, he must have

4    spent -- then spoken honestly and must have divulged all

5    material facts about which he knew that bore upon the subject.

6    Additionally, deception need not be direct to come within

7    the reach of the law.  If you find that the defendant's

8    statements and conduct combined were calculated to mislead the

9    plaintiff and that they did in fact mislead her and that the

10   plaintiff was acting reasonably, then this is enough to

11   constitute intentional misrepresentation.

12   Let's shift for a moment to talk about to known --

13   knowledge of falsity and willful disregard of truth or

14   falsity.  Mr. Spagnuolo is liable if he made a false statement

15   of fact knowing it to be false.  Likewise, if he made an

16   unqualified statement about facts, the truth or falsity of

17   which he could've determined with certainty and gave Ms.

18   Brooke-Petit -- Brooke-Petit the reasonable impression that he

19   was speaking of his knowledge, than Mr. Petit -- Mr. Spagnuolo

20   is not excused from liability if he didn't in fact know

21   whether the statement was true or false.  The law regards such

22   willful disregard of the facts as equivalent to an intentional

23   misrepresentation.  Actual intent to deceive need not be

24   proven.

25   Now, the plaintiff must prove that the defendant intended

1    that the plaintiff would rely on the misrepresentation and

2    that reliance, as I said before, must be reasonable.  So what

3    are we talking about?  As I say, plaintiff must prove that she

4    relied upon his misrepresentation and misrepresentation is

5    material.  If it is shown that the misrepresentation was one

6    of the principle grounds, although not necessarily the sole

7    ground or only ground, that caused Ms. Brooke-Petit to take

8    the particular action that the defendant intended her to take

9    as a result of the representations and that otherwise, Ms.

10   Brooke Petit wouldn't have taken such action.

11        Furthermore, Ms. Brooke-Petit may recover only if her

12   reliance on the defendant's statement was reasonable and

13   justifiable under the circumstances.  Ordinarily, Ms. Brooke-

14   Petit, as a plaintiff, is not required to investigate the

15   truth of assertions that were made to her.  The recipient of a

16   fraudulent misrepresentation of fact is ordinarily justified

17   in relying on its truth, although she might have ascertained

18   that the falsity of the representation had she made an

19   investigation.

20        If the defendant's representations were such so as to

21   induce the plaintiff not to undertake an independent in --

22   examination of the pertinent facts, lulling her into placing

23   confidence into his insurances, then her failure to ascertain

24   the truth through investigation doesn't preclude recovery.

25   This is so even though the defendant, Mr. Spagnuolo's,

1    representations were not conspicuously false.

2         And I remind you that if you do reach the issue of -- of --

3    of damages in this -- in this regard on the fraud elements

4    just as you did on -- on -- just as you're going to entertain

5    that exercise of looking at each of the elements and the

6    breach of contract, remember there's five elements, each of

7    which have to be proven by a preponderance of the evidence in

8    the fraud area.  You're not to engage in punitive damages, but

9    you are to award the plaintiff an amount of money that's the

10   difference between the value of the work in disrepair and as

11   misrepresented by the defendant and the value of the structure

12   if satisfactorily completed according to the agreement and/or

13   the misrepresentations not having been made by the defendant.

14        In other words, if you reach the issue of damages, award

15   Ms. Brooke-Petit a sufficient amount of money to put her in

16   the position that she would've been in if the situation had

17   been as represented by the plaintiff -- by the defendant.

18        In other words, you award her the benefit of the bargain or

19   the benefit of the contract with the defendant if those

20   damages are proven with reasonable certainty, and mathematical

21   precision is not required.

22        If the misrepresentation caused the plaintiff incur -- to

23   incur any additional expenses that were reasonably foreseeable

24   as a result of Mr. Spagnuolo's misrepresentation then you're

25   to award Ms. Brooke-Petit an additional amount of money that

1    will compensate her for those additional expenses she

2    incurred.

3        So we've now covered the breach of contract and the fraud

4    claims.   Let me move onto the sub -- to the subject of the

5    home improvement contractor statute.   That is Chapter 142A of

6    the general laws.

7        Now, what are -- what kind of properties are governed by

8    this statute?   Well, a homeowner's house was -- let me --

9    let's -- let's define owner under the statute.   We are talking

10   about the homeowners -- the homeowner.   So what do we mean by

11   the owner?   Well, owner is defined under the law as any

12   homeowner of a preexisting owner occupied building containing

13   at least one or not more than four dwelling units who orders,

14   contracts, or purchases the services of a contractor or

15   subcontractor.   So what is an owner?   It's defined under the

16   statute as any homeowner of a preexisting owner occupied

17   building containing at least one or not more than four

18   dwelling units who orders or contracts or purchases the

19   services from a con -- subcontractor or contractor.

20       Now, the case law, this -- this is the statute.   It's right

21   here.   That's the statute.   Chapter 142A.

22       And I've just read to you the definition right from --

23   well, excerpted from -- from section one in that -- chapter --

24   section one of that all define -- defines different words

25   including the word owner.   So there was a case that further

1   delineated or defined what the word homeowner means.  What is
2   a homeowner?
3       Well, a homeowner's house was preexisting, owner occupied
4   building under the statute even though the homeowner never
5   lived in that house where the remodeling was performed where
6   the house was a preexisting building and the owner brought it
7   to -- bought it to live in.  All right?  So that is not
8   defined in the statute that way, but the case -- a case came
9   up to the Supreme Judicial Court, this one -- this -- it's in
10  this one here.  A case came up to -- actually, it came up to
11  the Appeals Court and then they said well do you have to -- do
12  you have to immediate live in it?  Do you have to be living in
13  it at the time?  And they said no, you don't have to be living
14  in it at the time.  A homeowner's house was a preexisting
15  owner occupied building under the statute although the
16  homeowner never -- homeowner never lived in the house where
17  the remodeling was performed where the house was a preexisting
18  building, what it a preexisting building, and the owner bought
19  it to live in.  Okay?  So that defines homeowner for -- owner
20  for you.
21      Chapter 142A, section two requires that in every agreement
22  to perform residential contracting services for an amount in
23  excess of a thousand dollars has to be in writing and contain
24  the following relevant information.
25      I'm going to -- I'm going to go through these rather

1  speedily, not speedily but expeditiously.

2      The first thing is the identity of the people, their full

3  names, their socials, addresses, names of the contractor, and

4  so forth, and the date that the contract was executed between

5  the parties.  That's fairly obvious.  It identifies the

6  people, the dates, and the -- the names of the people and

7  their addresses.

8      The next thing is the dates under which the contract is

9  scheduled to perform and the date that it is supposed to be

10  completed substantially.

11      The third thing is a time schedule of payments to be made

12  under the contract and the amount of each payment stated in

13  dollars including finance charges and any deposit that's

14  required under the contract to be paid in advancement of the

15  commencement of work shall -- shall not exceed the greater of

16  one third of the total contract price or the actual cost of

17  any materials or equipment of a special order or custom made

18  nature which must be ordered in advance of the project in

19  order to assure that the project will proceed on schedule.

20      No final payments shall be demanded until the contract is

21  completed to the satisfaction of the parties.  There also need

22  be -- needs to be a clear and conspicuous notice appearing on

23  the contract that all contractors or subcontractors must be

24  registered and that any inquiry about a contractor or

25  subcontractor relating to registration should be directed to

1    the administrator.  We're talking about in this -- in this

2    instance, the chief administrator of the board of building

3    regulations of the executive office of state or executive

4    office of public safety.

5        And also, there should be a registration number of the sub

6    or the contractor on the contract.

7        All this have to be in ten point bold type or larger

8    directly above the space provided for the signature.

9        Chapter 142A, Section 17 prohibits the following acts by

10   contractors.  It prohibits the following acts by contractors.

11       One, abandoning or failing to perform without justification

12   any contract or project engaged -- engaged in or in

13   undertaking by a registered contractor or subcontractor or

14   deviating from or disregarding plans or specs in any material

15   respect without the consent of the contractor    of the owner,

16   excuse me.

17       Two, failing to credit to the owner any payment that have

18   been made to the contractor in connection with a residential

19   contract.

20       Three, making any material misrepresentation in the

21   procurement of the contract or making any false promise of a

22   character likely to influence, persuade, or induce the

23   contract.

24       And lastly, fourth, violating any building law of the

25   Commonwealth or any of its cities or towns.

1    So there's four elements that -- four prohibited acts by

2    the -- by the home improvement statute.

3    One is abandoning or failing to perform without

4    justification any contract or project.

5    Two is failing to credit payments that have been made to

6    the owner by the -- to the contractor by the owner.

7    Three is making any material misrepresentation is the

8    procurement of the contract or making any false promise of

9    contract -- of a character likely to influence or persuade or

10   induce the contract.

11   And, four, is the violation -- any violation of the

12   building code of the laws of the Commonwealth or any city or

13   town.

14   Now, a violation of any of these provisions shall

15   constitute an unfair or deceptive act under the provisions of

16   Chapter 93A, and I'm going to -- in other words, it -- it

17   flips you to the next inquiry.  The next line of inquiry is

18   onto Chapter 93A, and we'll talk about that in a moment.  But

19   let me repeat, a violation of any of those provisions shall

20   constitute an unfair or deceptive act under the provisions of

21   Chapter 93A.

22   If you find that Chapter 142A was violated by Mr.

23   Spagnuolo, then you must find that there was a violation of

24   Chapter 93A.

25   Now, as far as what you do with that violation, that's

1     another level of inquiry, and we'll talk about that in a

2     moment, but only if you find that there was a violation of the

3     home improvement contract, you must find that there was a

4     violation of Chapter 93A, and I emphasize thereafter.

5     Entirely, it's up to you as to what you do if you do find a

6     violation of the home improvement contractor to translating to

7     what to do on the 93A, and I'll -- I'll go through that in a

8     moment.

9         So now we shift to the last subject area and that is the

10    unfair or deceptive acts or practices.  And before we do that,

11    we're going to take a -- a one minute break.  Does anybody

12    need any water?  I'm getting a little dry here.

13        We're on the five yard line, so -- with Tom Brady.  Not me,

14    but Tom Brady, or what's the guy from Minnesota -- Minnesota -

15    - no, the guy who retires all the time.

16        UNIDENTIFIED ATTORNEY: Brett Favre.

17        THE COURT: Brett Favre.  That's a guy that doesn't know

18    when to hang up the cleats, huh?  He's retired five times in

19    the last whatever.

20        All right.  So Chapter 93A which is the Mass -- called the

21    Massachusetts Consumer Protection Act.  It outlaws certain

22    acts, unfair acts or -- of competition or unfair -- unfair

23    methods of competition or unfair and deceptive acts or

24    practices in the conduct of trade or commerce.

25        Now, what does trade or commerce mean?  It means the

1    advertising, offering for sale or rent or lease to sale, rent

2    or lease of services and/or property or any other thing of

3    value.  So it's the -- the sale or rent or lease of any

4    services or any other property.

5        To show a violation of Chapter 93A, Section 9, Ms. Brooke-

6    Petit must prove, one, that she's been injured by some act or

7    practice of Mr. Spagnuolo.

8        Two, that the act or practice was done in the conduct of

9    any trade or commerce.

10       Three, the act or practice is unfair or deceptive.

11       And, four, that at least thirty days before the filing of

12   the suit, she sent a demand letter in writing for relief that

13   identified herself and reasonably described the unfair or

14   deceptive act or practice and the injury, financial injury,

15   that she suffered.

16       So let me -- let me reiterate.  There are four elements

17   that must be proven under a Chapter 93A violation that she has

18   been injured by some act or practice of the defendant.

19       Two, that the act or practice was done in the conduct of

20   any trade or commerce.

21       Three, that the act or practice is deceptive or unfair.

22       And, four, that she issued a thirty -- a pre suit demand at

23   least thirty days before the lawsuit identifying in writing to

24   the defendant the relief that she requests, identifying

25   herself and reasonably describing the unfair or deceptive act

1    or practice and the injuries suffered.

2        Now, if the plaintiff, Ms. Brooke-Petit, wishes to recover

3    more than the minimum of twenty-five dollars under the

4    statute, she must also prove the amount of damages that

5    proximately resulted from the defendant's unfair or deceptive

6    act or -- or practice.  If she wishes to recover double or

7    triple damages, double or triple damages, the plaintiff must

8    additionally prove either that the act or practice was a

9    willful or knowing violation of the law or that Mr.

10   Spagnuolo's refusal to grant relief on demand or after demand

11   was made in bad faith with the knowledge or reason to know

12   that the act or practice complained of violated the law.

13       So if the plaintiff wishes to recover double or treble

14   damages -- remember I talked to you about compensatory damages

15   earlier?  This is a little different.  This is the double or

16   treble damages provision of Chapter 93A.  If the plaintiff

17   wishes to recover double or treble damages, the plaintiff must

18   additionally prove either that the act or practice was a

19   willful or knowing violation of the law or that the defendant,

20   Mr. Spagnuolo's, refusal to grant relief after the written

21   demand was made was made in bad faith with knowledge or reason

22   to know that the act or complaint -- or practice complained of

23   violated the law.

24       Now, I'm going to present to you the law of -- on each of

25   these elements.

1    First, let's talk about the demand letter. Somebody has to

2    send a letter in -- in -- just to kind of put people on notice

3    and find out what their reaction is. Maybe they can resolve

4    it. I don't -- you know, I don't know.

5        The first element that the plaintiff must prove by a

6    preponderance of the elements is that she mailed or delivered

7    an adequate demand letter to the defendant at least thirty

8    days before the action. This action was known -- was filed on

9    November 20th, 2006. So it has to be filed before that --

10   thirty days before that date of November 20th, 2006.

11       Now, what does adequate mean? It means that it identifies

12   the plaintiff as the claimant. It reasonably describes the

13   act -- unfair or deceptive act or practice. It reasonably

14   describes this injury. It specifies what the relief is

15   sought, and it includes at least one of the following

16   indication that the plaintiff is seeking relief under the

17   Chapter 93A, it refers to Chapter 93A, it refers to the

18   Consumer Protection Act, it asserts that Ms. Brooke -- Brooke-

19   Petit's rights as a consumer have been violated, it asserts

20   that the plaintiff was pursue -- will pursue multiple damages

21   and attorney's fees should be -- should -- if relief is award

22   -- is denied, should the -- if the defendant fails to offer

23   relief, and finally, it con -- must contain an assertion that

24   the defendant acted in an unfair or deceptive manner.

25       Now, as I said before, Ms. Brooke -- Brooke-Petit must

1    prove by a preponderance of the evidence, meaning more likely

2    than not, Mr. Spagnuolo was engaged in truth to commerce in

3    his dealings with her.  That -- in other words, that it took

4    place in a business context.  Trade or commerce includes, as I

5    said before, the offering of services.  This definition is

6    rather open ended.

7        Plaintiff is claiming in her dealings with the -- Mr.

8    Spagnuolo that she participated in a private, non-professional

9    basis.  The plaintiff has the burden of proving by a

10   preponderance of the evidence that she was a private, non-

11   person -- non-professional person such as a consumer or that

12   although she was a business person, in the context of this

13   case, the defendant, Mr. Spagnuolo, dealings with her did not

14   occur in connection with her business.

15       The term unfair or deceptive is un -- is broad and flexible

16   and it is intentionally so defined.  Use your common sense.

17       Based on the jury instructions that I'm now giving you,

18   consider whether Mr. Spagnuolo took unfair advantage of Ms.

19   Brooke-Petit and whether she was defenseless as a consumer.

20   Consider the defendant's conduct in light of all the

21   circumstances.

22       Now, a deceptive act or practice is one simply that had the

23   capacity to deceive.  An act or practice is deceptive if were

24   -- if it could reasonably cause a person to act differently

25   from the -- from the way the person, meaning the plaintiff

1   here, would act if she had known the truth. It -- it includes

2   any communication made with the intent to deceive another

3   person; however, an intent to deceive is not always necessary.

4   A negligent or careless misrepresentation of fact, the truth

5   of which was reasonably capable of ascertainment may also be a

6   deceptive act or practice.

7       To help you decide whether an act or practice is unfair,

8   ask yourself three simple questions. Unfair question -- three

9   simple questions.

10      First, does it fall in the -- some established concept of

11  unfairness? For something to be unfair, it doesn't need to

12  violate the law or some government regulation, but that is if

13  there is such a violation, something for you to consider, but

14  not every illegal act is unfair.

15      Second, ask yourself whether the defendant's act or

16  practice was immoral or unethical, oppressive, unscrupulous,

17  or otherwise unconscionable.

18      Remember that you must decide this question in the context

19  of the commercial -- context of the commercial marketplace

20  where, on the one hand, people don't expect to be cheated, but

21  on the other hand, they should expect to deal with each other

22  prudently and not at -- and -- and at arm's length, prudently

23  and at arm's length.

24      Third, consider whether the defendant, Mr. Spagnuolo's, act

25  or practice would cause substantially injure -- substantial

1   injury to the public or consumers in general.

2       Now, if -- if Mr. Spagnuolo's actions were unfair or

3   deceptive, then go on to decide whether Mr. Spagnuolo

4   willingly or knowingly committed that unfair or deceptive act

5   or practice.

6       Ms. Brooke-Petit has the burden of proving by a fair

7   preponderance of the evidence that the defendant had a sub --

8   subjectively culpable state of mind.

9       Willful or knowing requires something more than mere

10  negligence.

11      An unfair or deceptive statement is willful if the speaker

12  represents a fact to be true without knowing whether it is

13  true or not, and with false -- and with reckless disregard for

14  whether it's true or not.

15      An unfair or deceptive statement is knowing if the speaker

16  represents the fact to be true while knowing that it's not

17  true.

18      An unfair or deceptive act or practice is willful if the

19  person intends to commit an unfair or deceptive act.  An

20  unfair or deceptive act is knowing if the person, whatever his

21  or her intent, knows that by doing so, he's committing an

22  unfair or deceptive act.

23      Let's move on to the subject of injury, then damages, and

24  then we're done.

25      If the defendant, Mr. Spagnuolo, committed an unfair or

1    deceptive act or practice, you must then determine whether Ms.

2    Brooke-Petit was injured or damaged, more properly damaged is

3    the word, by the defendant, Spagnuolo's, actions.

4        In deciding whether Ms. Brooke-Petit was injured, you may

5    consider whether the plaintiff sustained any loss of money or

6    property or -- or emotional upset as a result of the

7    defendant's actions.

8        While the plaintiff need not prove actual reliance upon a

9    misrepresentation by Mr. Spagnuolo, in order to recover

10   damages, she must prove a causal connection between the

11   deception and the loss and that the loss was foreseeable as a

12   result of the deception.

13       Finally, if Mr. Brooke-Petit -- excuse me.  If Mr.

14   Spagnuolo engaged in an unfair method of competition or used

15   an unfair or deceptive act or practice, Ms. Brooke-Petit has

16   the right to be compensated for any loss or property -- a loss

17   of money or property she suffered in reaching your decision

18   and determining what loss she suffered, the -- the term money

19   means money.  It doesn't mean time or anything else.  Have in

20   mind the term property means the kind of property that's

21   purchased or leased, not intangible such as the right to -- a

22   sense of security or peace of mind or personal liberty.  Those

23   things don't -- don't -- don't apply.

24       What you're deciding at this point is what amount of money

25   will fairly and fully compensate Ms. Brooke-Petit for the

1  losses that Mr. -- Ms. Brooke-Petit sustained allegedly as a

2  result of Mr. Spagnuolo's conduct.

3      Now, if you find that Mr. Spagnuolo committed an unfair or

4  deceptive act or practice willfully or knowingly, then Ms.

5  Brooke-Petit is entitled to an award of up to three times, but

6  no less than two times, the actual damages you've determine

7  the plaintiff, Ms. Petit -- Ms. Brooke-Petit to have

8  sustained.  Let me repeat that.  If you find that Mr.

9  Spagnuolo has committed an unfair and deceptive act or

10  practice willfully or knowingly, then the plaintiff is

11  entitled to an award of up to three times but no less than two

12  times the actual damages you have determined the plaintiff,

13  Ms. Brooke-Petit, to have sustained.

14      You must, therefore, determine whether the damage caused by

15  Mr. Spagnuolo's unfair or deceptive act or practice should be

16  doubled or tripled.  Multiple damages are designed to impose a

17  penalty on a defendant.  The purpose of multiple -- multiple

18  damages is to -- is to deter callous and intentional

19  violations of the law and to promote prelitigation settlements

20  by making it unprofitable for a defendant to ignore a

21  plaintiff's request for relief.  Multiple damages are not

22  awarded to compensate particular harmed individuals.

23      In determining whether the actual damages should be doubled

24  or tripled, take into consideration all of the relevant

25  circumstances including the character and degree of the wrong

1    as shown by the evidence, the necessity of preventing similar

2    wrongs, and the defendant's degree of culpability.

3        Let me go through you -- with you, if I may, the jury

4    verdict slip, and if I could have counsel -- Martha, if you

5    wouldn't mind giving these to Joanne and counsel to -- these -

6    - this is -- these are two to counsel and these go to the

7    jury.

8        Thank you.

9        I'm going to hand out the special jury verdict slip form.

10       All right.  Do we have -- by the way, do we have -- do we

11   have a foreperson?

12       THE CLERK: Yes, your Honor.

13       THE COURT: Who is that?

14       THE CLERK: Juror in seat number thirteen, Mr. Shaughnessy.

15       THE COURT: All right.  Mr. Shaughnessey, would you mind

16   taking that obligation on you?

17       JUROR NUMBER: No problem.

18       THE COURT: All right.  Thank you.  There's special pay in

19   it for you.  You can have an extra sandwich or something, I

20   don't know.

21       All right.  So the just -- special jury verdict slip, let

22   me -- let me run through this with you.

23       Did the plaintiff and the defendant enter into a or -- an

24   oral or a written agreement or contract?

25       Does everybody have one?  No, not yet.  I'm sorry.

1        Okay.  All right.

2        Did the plaintiff and defendant enter into an oral or

3    written agreement or contract -- slash contract pursuant to

4    which the defendant agreed to provide or require -- provide

5    remodeling construction services, materials, and supplies, and

6    the plaintiff agreed to pay for those services as they were

7    provided?  Yes or no.  If you answer yes, then you go onto

8    question two.  If you answer no, then go to question three.

9    All of these directions done, they -- they -- they channel you

10   into certain directions based on your decision.

11       Now, I'm going to tell you that in each one of these

12   questions that you're going to be -- be addressing must be

13   answered by -- by ten of the twelve people satisfact -- in --

14   in -- in -- to the same answer.  In other words, you -- you

15   need -- there are fourteen of you.  We're going to take out

16   two of you as -- as alternates in a few moments, so twelve of

17   you will be sitting as jurors.  Two unfortunately will be

18   selected as alternates, but you'd be surprised the number of

19   times that alternates come into the breach.  Probably one out

20   of every four or five cases, the alternates -- somebody gets

21   sick, they have to go home, elderly parents, sick kids, they

22   get sick themselves, and so we have to throw an alternate into

23   the -- into the fray.

24       So alternates, stand by.

25       So in any event, let me -- let me -- that's question -- so

1    any of these questions that you're going to be -- every --

2    every of these questions that you're going to be allowed --

3    asked to address must be answered in -- in -- in -- in the

4    tune of ten people agreement.  The ten people that constitute

5    that number can change from each question.  It doesn't have to

6    be the same ten people, but it has to be the magic number of

7    ten.

8        So question two is did the -- did the defendant breach the

9    oral or written agreement or contract with the plaintiff by

10   failing to provide the services contracted for or by over --

11   over charging the plaintiff?

12       So then you go on to question three, fraud, and that's --

13   remember I defined fraud for you?  Did the defendant commit

14   fraud, deceit, and or misrepresentation by any means in

15   connection with the services provided?

16       Now, if you answer that yes, you go onto four.  If you

17   answer it no, then you go on to question six because roman

18   numeral three is the Chapter 142A section that we talked

19   about.  That's the home improvement contract, so this is

20   following the instructions that I went to.  First was the

21   contract issue, roman numeral one, two is the fraud issue, and

22   the three is the home improvement contract.

23       So did the defendant, in question four, violate Chapter

24   142A regarding the regulation of home improvement contractors

25   by any means in connection with the services provided by the

1    defendant to the plaintiff?

2        Now, if you answer that yes, you go on to the five.  If you

3    answer it no, then you jump to six.

4        If you answer five yes, then you ask -- then you answer

5    what amount of money would fully and -- and fairly compensate

6    the plaintiff for any injury or damage she sustained because

7    of the defendant's conduct based on your answers to question

8    one through four.

9        Let me just take a look at that.

10       It's not correct.

11       Yeah, I think that -- that has to be modified.  If you

12   answer the questions one -- no, we'll -- we'll go through

13   that.  I think that direction has to be changed a little bit,

14   doesn't it?

15       UNIDENTIFIED ATTORNEY: Yes.

16       UNIDENTIFIED ATTORNEY: Yes, your Honor.  I was just looking

17   at it, and it --

18       THE COURT: Yeah, I -- I just caught it myself.  If -- if --

19   so if your answer to question number -- let's see.  How do we

20   modify that?

21       UNIDENTIFIED ATTORNEY: I think, your Honor, there's two on

22   page two that need to be -- the references need to be changed.

23       THE COURT: Two.  All right.  Well, you know, we'll -- we'll

24   go through those directions in a few minutes, but let me just

25   get the questions, and then we'll correct it, and I -- I -- I

1   thank you.  It's always good to have another set of eyes.

2   So what amount of money would fully and fairly compensate

3   the plaintiff for any injury or damage she sustained because

4   of the defendant's conduct based on your answers to one

5   through four, but that -- that we're going to have to -- we're

6   going to have to give you different instructions.

7   Now, we go on to roman numeral four and -- on Chapter 93A

8   which is the unfair violation -- unfair or deceptive act or

9   practice.

10   If your answer to number five is yes, that's the one of

11   home improvement, that's going to be the one on home

12   improvement contract.  It's going to be actually question four

13   -- we'll correct this for you -- you must find that there was

14   a violation of General Laws Chapter 93A, and then you may

15   award the plaintiff double or triple the amount awarded to the

16   plaintiff in response to question five.

17   Therefore, what amount of money do you award the plaintiff

18   as a result of the violation of the home improvement contract

19   of which amount can either be a doubling or trebling -- or

20   tripling of the amount awarded.

21   Then, we go on to the Chapter 93A.  Did the plaintiff send

22   an adequate demand letter to the defendant at least thirty

23   days before November 20th, 2006?  If your answer is yes to A,

24   then you go on to 7B.  If your answer is no, then you stop,

25   notify the Court Officer, sign the jury verdict slip, and

1    return to the courtroom.

2        7B is was the defendant engaged in trade or commerce when

3    he entered into the contract with the plaintiff, etcetera,

4    etcetera, etcetera.

5        C, did the -- did the defendant act unfairly or deceptively

6    when he entered into that agreement with the plaintiff?

7        And then D, did the act -- unfair or deceptive acts that

8    the defendant engaged in cause injury or -- or loss to the

9    plaintiff?

10       If you find a violation of Chapter 93A, you may award the

11   plaintiff double or treble the amounts awarded to the

12   plaintiff in response to question five.  And we may adjust

13   that.

14       What amount of money do you award to the plaintiff as a

15   result of the defendant's violation of Chapter 93A?  And that

16   amount can be either double or triple.

17       Now, what we're going to do is I -- I see a couple of

18   things that we need to correct on -- on the directions of

19   these questions and the question numbers that I referred to in

20   the directions.

21       So that's the general thrust of what we -- we need you to

22   decide.  It's long.  It's not terribly complicated, but spend

23   your time -- take your time on these things.  It's not a rush

24   to judgment.  As these -- as these -- this case, as you well

25   know, has taken several years to get to this point, and it's

1    no reflection on the parties by any stretch of the

2    imagination.  It's just a reflection that the Courts really

3    need to do their jobs better.

4        So it's not their faults, but the point is that we've --

5    we've spent several days doing this.  We'd like you to have a

6    full and measured discussion of the issues.

7        Along those lines, let me tell you that everybody has a

8    voice, and everyone has a vote including the foreperson, so

9    it's not like you break ties or anything like that.

10   Obviously, there's twelve people.  There's not -- probably not

11   going to be any ties, but --

12       Who are our alternates, Martha?

13       We'll have Lynn.

14       THE CLERK: Want Lynn to draw?

15       THE COURT: Lynn draws.

16       THE CLERK: You draw.

17       THE COURT: You just need to select two.

18       THE CLERK: The juror in seat number four, Ms. Colden or Ms.

19   Colben, and the juror in seat number nine, Tescassi.

20       Thank you.

21       THE COURT: All right.  So the -- those -- they will be

22   alternate jurors, and just stand by.  We'll put you in a

23   separate room, and you can just sit -- well, we'll get you

24   some lunch in any event.

25       Did lunch come yet?

1    THE CLERK: No. 11:30 it should --

2    THE COURT: Okay. All right.

3    We -- we have -- we've got lunch coming in for you any

4    minute, so you can do that.

5    Let me -- let me see counsel at sidebar, and then we'll --

6    and in the meantime, what I'm going to ask you to do is if you

7    wouldn't mind just -- wait -- wait, please.

8    Would -- would you mind -- no, the lawyers are okay.

9    Joanne, would you mind collecting these from the jurors so

10   that we can correct these -- these citations to the different

11   questions.

12   (DISCUSSION AT SIDEBAR)

13   THE COURT: (Inaudible at 01:56:15, low audio at sidebar.)

14   On the jury instructions, any issues?

15   UNIDENTIFIED ATTORNEY: I -- I do have one, your Honor.

16   THE COURT: Yeah.

17   UNIDENTIFIED ATTORNEY: And -- and I mean this very

18   respectfully --

19   THE COURT: Yeah, that's -- it's fine. Respect or none, the

20   trial (inaudible at 01:56:35, low audio at sidebar.)

21   One thing?

22   UNIDENTIFIED ATTORNEY: Yes.

23   THE COURT: Okay.

24   UNIDENTIFIED ATTORNEY: When you --

25   THE COURT: (Inaudible at 01:56:49, low audio at sidebar.)

1    UNIDENTIFIED ATTORNEY: (Inaudible at 01:56:51, low audio at

2    sidebar.)

3    UNIDENTIFIED ATTORNEY: Well, the -- the important thing is

4    -- is that, you know, it does -- it does give you the benefit

5    of (inaudible at 01:57:25, low audio at sidebar.)

6    THE COURT: Well, where -- where does it say that it has to

7    be (inaudible at 01:59:20, low audio at sidebar.)

8    UNIDENTIFIED ATTORNEY: (Inaudible at 01:58:31, low audio at

9    sidebar.)

10   THE COURT: The facts of that case.

11   UNIDENTIFIED ATTORNEY: (Inaudible at 01:58:41, low audio at

12   sidebar.)

13   THE COURT: (Inaudible at 01:58:45, low audio at sidebar)

14   has to be intended for uses of owner occupied dwelling, and I

15   don't think it has been.

16   (END OF DISCUSSION AT SIDEBAR)

17   THE COURT: Could -- could folks keep it down?  I don't know

18   who -- this is like a key part of the case here, so let's just

19   cool it.

20   (DISCUSSION AT SIDEBAR)

21   THE COURT: Go ahead.  I think it's a parenthetical

22   observation. I don't think it's -- it's defined as soon as the

23   work was done, but someone can -- it's like someone

24   registering (inaudible at 01:59:43, low audio at sidebar)

25   house, you know, it's --

1    (Break in audio.)

2        THE COURT: -- have to be immediate, that's just what Mr.

3    (inaudible at 00:02, low audio at sidebar) is going to do on

4    the facts of this case. You think he has to go in (inaudible

5    at 00:07, low audio at sidebar.)

6        UNIDENTIFIED ATTORNEY: Well, I think --

7        THE COURT: What if you say, well, I want (inaudible at

8    00:10, low audio at sidebar) property down the cape, I want my

9    (inaudible at 00:11, low audio at sidebar) to use it for the

10   first month, and then I am going to  move into it the second

11   month, are you telling me that that doesn't apply? That's

12   (inaudible at 00:19, low audio at sidebar.)

13       UNIDENTIFIED ATTORNEY: I think what I'm saying is, and I

14   think the way (inaudible at 00:23, low audio at sidebar.)

15       THE COURT: Just show me exactly what you want me to read?

16       UNIDENTIFIED ATTORNEY: It's just that last line because

17   your voice, respectfully, did drop.

18       THE COURT: No, no. That's fine. (Inaudible at 00:41, low

19   audio at sidebar) an hour and twenty minutes.

20       All right. Do you have any problems with me reading this?

21       UNIDENTIFIED ATTORNEY: No, your Honor.  I was content with

22   what you -- you're just re-reading what we agreed to.

23       THE COURT: All right. I will be happy to do that. Okay.

24       UNIDENTIFIED ATTORNEY: Thank you very much.

25       THE COURT: That's fine. That's what we do in this. Is there

1    anything else?

2        UNIDENTIFIED ATTORNEY: No.

3        UNIDENTIFIED ATTORNEY: About the jury instructions, no,

4    your Honor.

5        THE COURT: All right. So you're on the verdict form.

6    (Inaudible at 01:01, low audio at sidebar.) They're chomping

7    at the bit to get out there.

8        So, this is what we'll do. I will -- I will them we're

9    going to work on the jury verdict form. You folks (inaudible

10   at 01:15, low audio at sidebar) Exhibits in order. (Inaudible

11   at 01:20, low audio at sidebar) we'll let them chew on the

12   Exhibits for the next fifteen minutes, and we'll correct all

13   this. I apologize. I am not perfect.

14   (END OF DISCUSSION AT SIDEBAR)

15       THE COURT: All right. So, what I understand -- we're going

16   to let you go in two seconds. I am going to highlight -- not

17   highlight. To the extent that I may have misinformed you about

18   that case, it was an Appeals Court case, and I will read you

19   the definition that's been agreed to between the parties and

20   that is from the Appeals Court.

21       The homeowner's house was preexisting owner occupied

22   building under the law that regulates home improvement

23   contracts, although the homeowner never lived in the house

24   where remodeling was performed, where the house was

25   preexisting, and the owner bought it to live in.

1      All right. I tried to do that as well as I could. Is that

2   okay with you?

3      UNIDENTIFIED ATTORNEY: Thank you very much, your Honor.

4      THE COURT: Fair enough. Fair enough. Thank you.

5      Okay. I'm happy -- and thank you very much for correcting

6   me, it's -- these are important points. All of these are

7   important points, but I am happy to be corrected.

8      The jury verdict slip we've collected, we have them all,

9   okay, so we're going to -- the lawyers and I are going to work

10  on those, we're going to swear in Ms. Mullane. We'll get you

11  some lunch, and let's see there was one other thing I wanted

12  to say. I think that was it. I think that was it. Okay.

13     Anything else? Am I missing anything?

14         (Discussion off the record with Clerk.)

15            (Court Officer Sworn.)

16     THE COURT: All right. And I just remembered what I wanted

17  to tell you. Two caveats or cautionary notes.

18     One, we do not have the ability to read back a juror -- a

19  witness's testimony. If you say, what did Mr. Smith say during

20  the course of the trial, we don't have that -- we don't have

21  that capability. We are on a digital system which is better,

22  but we don't have real time capability to transcribe what you

23  heard.

24     Two, the Exhibits are the Exhibits that have been marked.

25  That's it. We don't open it up for any other Exhibit. If you

1    say, well what about something that you may have heard in

2    mention or passing, if it's not marked it, it's not to be

3    considered, you know, as a document or a photograph or

4    whatever.

5        Anything else, counsel? No. Great.

6        UNIDENTIFIED ATTORNEY: No, your Honor.

7        UNIDENTIFIED ATTORNEY: No, your Honor.

8        THE COURT: Thank you. So we'll work on the special jury

9    verdict slip, and thank you very much for your attention.

10       COURT OFFICER: All rise, please.

11

12   (End of selected portion of transcript.)

13

14

15

16

17

18

19

20

21

22

23

24

25                           (Adjourned)