UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT SPAGNUOLO, Jr., ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | Civil Action No. 13-11694-DJC |
| ) | |
| EDWINA BROOKE-PETIT, ) | |
| ) | |
| Appellee. ) | |

**MEMORANDUM OF DECISION**

**CASPER, J.**                                                                 **March 3, 2014**

**I.    Introduction**

Debtor-Appellant Robert Spagnuolo, Jr. ("Spagnuolo") now appeals the order of the Bankruptcy Court allowing the motion for summary judgment of Plaintiff-Appellee Edwina Brooke-Petit ("Brooke-Petit"). For the reasons set forth below, this Court AFFIRMS IN PART and VACATES IN PART the order and REMANDS the case for further findings on a limited issue.

**II.   Factual Background**

   **A.    Brooke-Petit Obtains a State Court Judgment Against Spagnuolo**

In 2005, Brooke-Petit engaged Spagnuolo to perform and supervise renovations at her home in Mashpee, Massachusetts. Spagnuolo v. Petit (In re Spagnuolo), 491 B.R. 1, 4 (Bankr. D. Mass. 2013). Brooke-Petit made various allegations regarding the deficiencies of this work in a lawsuit in Middlesex Superior Court. Id. The state court instructed the jury on breach of

1

contract, damages for breach of contract, damages for breach of a construction contract, fraud, damages for fraud and violations of Mass. Gen. L. c. 93A and c. 142A. Id. at 4-5.

In instructing the jury on fraud, the court identified five elements that must be established by a preponderance of the evidence: 1) "that [the defendant] made a false statement or statements to the plaintiff, and that statement . . . or those statements concerned some fact that a reasonable person would consider important to the decision that the plaintiff was about to make;" 2) that "when [the defendant] made the statement, the defendant either knew that the statement was false or recklessly made the statement by willfully disregarding its truth or falsity;" 3) the defendant "made the false statement with the intention that the plaintiff would rely on that statement in making her decision;" 4) "in making her decision, [the plaintiff] did in fact rely upon the defendant's statement as true and that . . . her reliance was reasonable under the circumstances;" and 5) "that the plaintiff suffered some financial loss as a result of relying on the defendant's false statement." D. 15-1 at 69-71.

The state court then proceeded to define each of these elements in more detail, including the second element:

> Mr. Spagnuolo is liable if he made a false statement of fact knowing it to be false. Likewise, if he made an unqualified statement about facts, the truth or falsity of which he could've determined with certainty and gave [the plaintiff] the reasonable impression that he was speaking of his knowledge, [then the defendant] is not excused from liability if he didn't in fact know whether the statement was true or false. The law regards such willful disregard of the facts as equivalent to an intentional misrepresentation. Actual intent to deceive need not be proven.

Id. at 73. As to damages, the court instructed that "if you reach the issue of damages, award [the plaintiff] a sufficient amount of money to put her in the position that she would've been in if the situation had been as represented by . . . the defendant." Id. at 75.

On August 24, 2010, the jury found Spagnuolo liable on each of Brooke-Petit's claims and on a special verdict form indicated its findings that 1) a contract existed between the parties; 2) the defendant breached the contract; 3) the defendant committed fraud, deceit, and/or misrepresentation by any means, in connection with the services provided; and 4) the defendant violated Mass. Gen. L. c. 142A.  D. 15-2 at 22-26.  The verdict form instructed that a finding of liability on c. 142A automatically led to a finding of liability on Brooke-Petit's c. 93A claim.  Id. at 24.[1]  The jury declined to award multiple damages under Mass. Gen. L. c. 93A, § 9.  Id. at 25.

### III. Procedural Background

Spagnuolo filed a voluntary Chapter 7 bankruptcy petition on February 1, 2011.  No. 11-br-10844, D. 1.  Brooke-Petit opened an adversary proceeding on September 28, 2011.  No. 11-ap-01290, D. 1.  Brooke-Petit moved for summary judgment on November 15, 2012.  Id. at D. 42.  The Bankruptcy Court heard the parties on March 6, 2013, id. at D. 67, and entered summary judgment in Brooke-Petit's favor on May 15, 2013.  Id. at D. 81.  This appeal followed.[2]

### IV. Standard of Review

On appeal, the "district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceeding."  Fed. R. Bankr. P. 8013.  In its review, the district court reviews the Bankruptcy Court's conclusions of law *de novo*, but must accept its findings of fact unless they were clearly erroneous.  TI Fed. Credit

---

[1] Mass. Gen. L. c. 142A, § 17 provides that: "[v]iolations of any of the provisions of this chapter shall constitute an unfair or deceptive act under the provisions of chapter ninety-three A."

[2] Pursuant to Fed R. Bankr. P. 8012, this Court determines that, after examination of the briefs and record, oral argument is not needed.

Union v. DelBonis, 72 F.3d 921, 928 (1st Cir. 1995); Fed. R. Bankr. P. 8013.  Accordingly, as to the Bankruptcy Court's findings of fact, they "are to be set aside only if, on the entire evidence, [the Court is] 'left with the definite and firm conviction that a mistake has been committed.'"  In re Tully, 818 F.2d 106, 109 (1st Cir. 1987) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)).  Questions of nondischargeability involve a legal question and are reviewed *de novo*.  In re Baylis, 313 F.3d 9, 16 (1st Cir. 2002).

**V.     Discussion**

    **A.     The Bankruptcy Court Correctly Held that Issue Preclusion Barred Re-Litigation of Whether His Conduct, Found to Constitute Fraud by a State Court Verdict, is Nondischargeable Under 11 U.S.C. §523(a)**

Spagnuolo challenges the Bankruptcy Court's finding that issue preclusion barred re-litigation of whether Spagnuolo's debt to Brooke-Petit is dischargeable under 11 U.S.C. § 523(a)(2)(A).  This statute provides that "[a] discharge under [the bankruptcy code] does not discharge an individual debtor from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud."  Id.  The Bankruptcy Court found that Spagnuolo was "collaterally estopped from contesting his liability under § 523(a)(2)(A) based upon a state trial court jury verdict for fraud."  In re Spagnuolo, 491 B.R. at 4.

"Under federal law, a state court judgment receives the same preclusive effect as it would receive under the law of the state in which it was rendered."  Dillon v. Select Portfolio Servicing, 630 F.3d 75, 80 (1st Cir. 2011).  Accordingly this Court looks to state law in determining the metes and bounds of issue preclusion.  Jennings v. Nathanson, 404 F. Supp. 2d 380, 393 (D. Mass. 2005) (citing Nottingham Partners v. Trans-Lux Corp., 925 F.2d 29, 32 (1st Cir. 1991)).

Massachusetts law precludes re-litigation of an issue decided in a prior proceeding "'[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.'"  Alba v. Raytheon Co., 441 Mass. 836, 841 (2004) (quoting Martin v. Ring, 401 Mass. 59, 61 (1987)).  While Brooke-Petit maintains that her state court judgment precludes re-litigation of the issue of whether Spagnuolo obtained a debt by "actual fraud," 11 U.S.C. § 523(a)(2)(A), Spagnuolo argues that the existence of the requisite fraudulent intent was not "actually litigated," Alba, 441 Mass. at 841, in the state court proceeding.

To establish nondischargeability of a debt obtained by fraud, a plaintiff must demonstrate that the debtor "(1) [made] a false representation, (2) [did] so with fraudulent intent, i.e., with "scienter," (3) [intended] to induce the plaintiff to rely on the misrepresentation, and (4) the misrepresentation [did] induce reliance, (5) which is justifiable, and (6) which cause[d] damage (pecuniary loss)."  Palmacci v. Umpierrez, 121 F.3d 781, 786 (1st Cir. 1997) (citing 2 F. Harper, et al., Law of Torts § 7.1, at 381 (2d ed. 1986).  "To prove scienter, the plaintiff must show that the debtor acted with an actual intent to mislead or was reckless in disregarding the truth of a representation. Because direct evidence of an intent to mislead or defraud is seldom available, these elements may be proven by the totality of circumstantial evidence."  In re Aoki, 323 B.R. 803, 815 (B.A.P. 1st Cir. 2005) (internal citations omitted).

The Bankruptcy Court compared the standard of nondischargeability in § 523(a)(2)(A) with the state court judge's instructions to the jury on Brooke-Petit's fraud count, finding that the jury instructions and verdict "comport[ed] with the requirements for an exception to discharge

under § 523(a)(2)(A)." Spagnuolo, 491 B.R. at 16.  On appeal, Spagnuolo challenges the Bankruptcy Court's finding as to whether the state court jury's findings as to Spagnuolo's state of mind meet the standard under § 523(a)(2)(A). D. 14 at 14-15. Spagnuolo argues that the state court jury's findings were insufficient because the state court judge instructed the jury that they could find for Brooke-Petit on her fraud count even without finding that Spagnuolo "intended to deceive" her. Id. Indeed, the state court instructed the jury that "[a]ctual intent to deceive need not be proven." D. 15-1 at 73. Courts interpreting the scienter requirement in § 523(a)(2)(A) have determined that scienter requires that "the debtor intended to deceive." McCrory v. Spigel (In re Spigel), 260 F.3d 27, 32 (1st Cir. 2001) (citing Palmacci, 121 F.3d at 787). Plaintiffs can show this by demonstrating that the debtor: "(a) knows or believes that the matter is not as he represents it to be; (b) does not have the confidence in the accuracy of his representation that he states or implies; or (c) knows that he does not have the basis for his representation that he states or implies." Palmacci, 121 F.3d at 787 (quoting Restatement (Second) of Torts § 526). Under § 523(a)(2)(A), a plaintiff must prove "actual fraud," which requires an "actual intent to mislead." Palmacci, 121 F.3d at 788.

Putting aside, for a moment, the state court's admonition that "[a]ctual intent to deceive need not be proven," the state court's instruction on fraudulent intent closely tracks the First Circuit's application of § 523(a)(2)(A) in Palmacci. The state court instructed the jury that: "Mr. Spagnuolo is liable if he made a false statement of fact knowing it to be false[;] or . . . if he made an unqualified statement of facts, the truth or falsity of which he could've determined with certainty and gave Ms. Brooke-Petit . . . the reasonable impression that he was speaking from his knowledge . . . if he didn't in fact know whether the statement was true or false. The law regards

such willful disregard of the facts as equivalent to an intentional misrepresentation." D. 15-1 at 73. The state court then added: "[a]ctual intent to deceive need not be proven." Id. Thus, the state court instructed the jury to find Spagnuolo liable if they determined that he knew his statements were false or if he willfully disregarded the truth. This is squarely consistent with the First Circuit's interpretation of § 523(a)(2)(A). Spigel, 260 F.3d at 32 (requiring that the "debtor made a knowingly false representation or one made in reckless disregard of the truth). Accordingly, Spagnuolo's intent – as it pertains to § 523(a)(2)(A) – was "actually litigated" in the state court action.

Spagnuolo argues that the state court's statement that "[a]ctual intent to deceive need not be proven" is seemingly irreconcilable with the court's instructions immediately preceding it. The Bankruptcy Court resolved this inconsistency by determining that "the state court's use of the phrase 'intent to deceive' clearly was a reference to direct evidence of intent to deceive, as generally intent is determined from all the facts and circumstances." Spagnuolo, 491 B.R. at 15. In other words, while intent can be proven with direct evidence, litigants most often prove intent with circumstantial evidence "[b]ecause direct evidence of intent is rarely available." Morgan Keegan & Co., Inc., v. Swan (In re Swan), 499 B.R. 118, 126 (Bankr. D. Mass. 2013). The Bankruptcy Court therefore concluded that the state court's instruction meant that the jury did not need direct evidence of Spagnuolo's fraudulent intent. Spagnuolo, 491 B.R. at 15.

This Court agrees. The state court clearly instructed the jury that it could consider both direct and circumstantial evidence. D. 15-1 at 51. In addition, one could read the jury instructions to mean that proof of reckless disregard for the truth (sufficient for nondischargeability under § 523(a)(2)(A)) is sufficient to give rise to a finding of liability for

7

fraud.  In either case, to read the jury instructions as Spagnuolo asks this Court to do – that the state court instructed the jury that they could find Spagnuolo liable applying a standard of intent lesser than what is required for § 523(a)(2)(A) – would be inconsistent with the totality of the instructions for the reasons discussed above.

Spagnuolo cites Petrucelli v. D'Abrosca (In re D'Abrosca), No. 09-11638, 2011 WL 4592338 (B.A.P. 1st Cir. 2011) for the notion that issue preclusion cannot properly be applied to the instant set of circumstances.  D. 14 at 21-22.  D'Abrosca is distinguishable, however, as it addressed nondischargeability under 11 U.S.C. § 523(a)(4) (for nondischargeability for "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny") and having concluded that collateral estoppel did not bar relitigation of whether Debtor had committed defalcation while acting as a fiduciary since the issue previously determined was not identical and remanded the matter to the bankruptcy court, the court did "not address" the additional issue raised by the Debtor about whether "it is impossible to determine whether and to what extent the damages awarded pertain to the breach of fiduciary duty."  Id. at *4-5, 9.  Accordingly, this Court affirms the Bankruptcy Court to the extent that it rejected Spagnuolo's argument regarding issue preclusion barring re-litigation of whether fraud proven in state court trial met the standard for same for nondischargeability under § 523(a)(2)(A).

      **B.**      **The Issue of What Portion of the Verdict Is Attributable to Fraudulent Conduct and, Therefore, Nondischargeable, Remains**

Spagnuolo has argued both to the Bankruptcy Court and to this court that the jury verdict "is not dispositive on the issue of what damages may be attributable to what conduct."  D. 14 at 15; Spagnuolo, 491 B.R. at 8.  Spagnuolo cites Hood v. Bennitt (In re Bennitt), 348 B.R. 820 (Bankr. N.D. Ala. 2006) for the proposition that "[i]n order for the state court litigation to have

collateral estoppel effect in a Bankruptcy Court, it must be clear that the factual determinations made by the trier of fact parallel the facts necessary to meet the federal standard of nondischargeability." D. 14 at 15 (citing Bennitt, 348 B.R. at 828-29 (quoting Atchley v. Stover (In re Stover), 88 B.R. 479, 483 (Bankr. S.D. Ga. 1988))).  In Bennitt, a state court jury returned a verdict for the plaintiff, who had alleged both fraud and breach of contract.  Id. at 829.  Because the jury did not specify which of the plaintiff's two causes of action formed the basis of its decision, the Bankruptcy Court could not determine which issues were "actually and necessarily decided in the prior lawsuit."  Id. at 830 (quoting S.E.L. Maduro (Florida), Inc. v. M/V Antonio de Gastaneta, 833 F.2d 1477, 1483 (11th Cir. 1987)).

Other decisions support the proposition that a jury's failure to allocate damages between a cause of action that is consistent with the federal standard of nondischargeability and a cause of action that does not rise to that standard cannot be the basis of a judgment that has a preclusive effect without further findings regarding same on remand.  See In re Raccuglia, 464 B.R. 477, 483 (Bankr. N.D. Ga. 2011) (noting that "this Court cannot speculate concerning which cause(s) of action the state court was considering in entering its ruling and cannot parcel out a single award"); In re Gallagher, 388 B.R. 694, 704 (W.D.N.C. 2008) (finding that "it is impossible to determine from the face of the State Court Judgment what amount of damages was awarded to Keever solely with regard to the claim for alienation of affections [or criminal conversion] and remand[ing] to the Bankruptcy Court for further findings on this issue").  Other courts have noted that "[a]ny doubts as to the allocation of damages are to be resolved in favor of the non-moving party."  In re Lowery, 440 B.R. 914, 926 (Bankr. N.D. Ga. 2010).

Finding no First Circuit case discussing the consequence of a prior jury's failure to allocate damages for the purposes of deciding nondischargeability under § 523(a)(2)(A) (and the parties having not directed the Court to any such authority), the Court, nevertheless, agrees with the reasoning of those decisions discussed above. That is, where a jury finds liability on multiple claims, but only some claims meet the standard of nondischargeability provided in § 523(a)(2)(A), but where the jury does not allocate damages between counts, the entirety of the judgment is not nondischargeable without some finding regarding same.

Here, the state court jury found Spagnuolo liable for fraud, but also found him liable for breach of contract, violation of Mass. Gen. L. c. 142A and violation of Mass. Gen. L. c. 93A. Spagnuolo, 491 B.R. at 6 & n.5. Not all of the conduct proven at trial necessarily meets the federal standard of nondischargeability due to fraud. Sack v. Friedlander (In re Friedlander), 170 B.R. 472, 479 (Bankr. D. Mass. 1994) (noting that "a violation of G.L. c. 93A, § 2 can be founded on behavior that lacks the characteristics of misconduct necessary to support a finding of nondischargeability for actual fraud"); In re McLaughlin, 109 B.R. 14, 17 n.1 (Bankr. D.N.H. 1989) (noting that "a breach of contract does not, in and of itself, preclude a discharge") (citation omitted). The jury did not allocate its $250,000 award among these counts.

Preserved in the record is the colloquy between the state court judge and Spagnuolo in which the Court explained that "we want this judgment satisfied. We don't want people, you know, walking away from them and thinking that because, you know, because they can declare bankruptcy as some people think that they could, they're going to get away from it. But, this is a fraudulent finding by the jury . . . [and so i]t's not protected by bankruptcy." D. 15 at 38. Although the Bankruptcy Court recounted this exchange in a footnote in its decision, the Court

cannot say on this record that there were sufficient findings on this issue. Spagnuolo, 491 B.R. at 7 n.6.  In its ruling, the Bankruptcy Court did not find that jury verdict was entirely attributable to the fraud count.  Nor did it independently conclude in light of the record that the entirety of the award is attributable to Spagnuolo's fraudulent conduct, which it is empowered to do.  In re Stanley-Snow, 405 B.R. 11, 22 (B.A.P. 1st Cir. 2009) (noting that "in determining whether an issue was actually litigated and decided, a federal court is free to go beyond the judgment . . . and examine the pleadings and evidence in the prior action") (citation omitted).  That is, it did not make findings that the conduct underlying the alleged fraud was the same conduct underlying Brooke-Petit's claims for breach of contract and violations of Mass. Gen. L. cc. 93A and 142A.

In the absence of any such finding by the Bankruptcy Court, the Court determines that remand on this limited issue (of the portion of jury verdict for damages is attributable to fraud) is appropriate.  See Groman v. Watman (In re Watman), 301 F.3d 3, 8 (1st Cir. 2002) (quoting Brandt v. Repco, Printers & Lithographics, Inc., (In re Healthco), 132 F.3d 104, 108 n.5 (1st Cir. 1997)); see also In re Gallagher, 388 B.R. at 704 (remanding matter to Bankruptcy Court where "it is impossible to determine from the face of the State Court Judgment what amount of damages was awarded" on claim meeting standard of nondischargeability). On remand, the Bankruptcy Court should make findings about what portion of the jury verdict is attributable to fraud.[3]

---

[3] Given the ruling above regarding the jury instructions regarding fraud being in accordance with the standard for nondischargeability under § 523(a)(2)(A), Spagnuolo's further argument that the Bankruptcy Court also erred by failing to consider the entirety of the state trial transcript as to this issue, D. 14 at 22, is moot.  The same, however, cannot be said as to determining how much of the jury verdict of damages is attributable to fraud and, therefore, is nondischargeable.  Nothing bars the Bankruptcy Court from reviewing the entirety of the

## VI. Conclusion

For the foregoing reasons, the Court AFFIRMS IN PART and VACATES IN PART the Bankruptcy Court's entry of summary judgment and REMANDS this matter to the Bankruptcy Court for further findings consistent with this decision.

**So ordered.**

/s/ Denise J. Casper
United States District Judge

---

transcript upon remand in attempting to determine the remaining issue. See <u>Stanley-Snow</u>, 405 B.R. at 22.